**Charles David Maley, as Receiver of McKeown & Co., Plaintiff-Appellee, v. James P. Norville, Defendant-Appellant.**

Gen. No. 50,790.

First District, First Division.

May 13, 1968.

Francis E. Goodman, of Chicago, for appellant.

John D. Schwartz, George W. Overton, and Harry Golter, of Chicago (Overton, Marks & Schwartz, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Defendant appeals from an order denying his petition under section 72 of the Civil Practice Act (Ill Rev Stats 1967, c 110, § 72), which petition sought to vacate a judgment entered against defendant, to stay the execution thereon, and to quash the writ of capias ad satisfaciendum theretofore entered against defendant. On this appeal, defendant maintains that his petition under section 72 set forth a meritorious defense to the judgment, that he made a showing of reasonable diligence, that the original complaint failed to state a cause of action, and that the body execution issued against him was unjust, not founded upon fact, and contrary to the rules.

The instant action was commenced on March 3, 1965, when plaintiff, who had been appointed the receiver for

McKeown & Co. (McKeown), by the Federal District Court for the Northern District of Illinois, filed a complaint against Norville and eight other defendants, all of whom were partners of an Illinois copartnership known as Iroquois Development Company (Iroquois). The complaint alleged that an audit of McKeown's books disclosed that there was due and owing from Iroquois to McKeown, the sum of $20,600. Norville was the Secretary and a Director of McKeown, as well as a partner in Iroquois. The complaint further alleges that the loans made to Norville were in violation of the Illinois Business Corporation Act and "the individual officers and directors who made said loan acted wilfully and wantonly and knowingly in violation of the law." On the basis of this allegation it is claimed that malice was the gist of the action with respect to Norville's liability.

The record shows that on March 8, 1965, the Sheriff of Kane County, Illinois, served Norville personally with a summons and copy of the complaint, both in his individual capacity and in his capacity as a partner of Iroquois.

On May 4, 1965, Norville, having failed to file an answer, or otherwise make an appearance, was judged in default and a hearing was set for May 19, 1965. On that date, the following order was entered:

"The Court having heard the evidence in open Court and being otherwise fully advised in the premises, the Court doth find:

"1. That there is due and owing from the defendant, James P. Norville, to the plaintiff Charles David Maley, as Receiver of McKeown & Co., the sum of $16,100.00 on account of transactions between McKeown & Co. and Iroquois Development Company, a co-partnership.

"2. That the defendant, James P. Norville, is guilty of wanton and willful misconduct, and that

364

malice is the gist of the action against the said defendant.

"3. That the said defendant, James P. Norville, is guilty of malice with respect to his liability to the plaintiff in the sum of $16,100.00."

One week later, plaintiff filed an "Execution And Fee Bill On Transcript On Judgment" in Kane County, which execution showed that a judgment had been entered against defendant on May 19, 1965, in the sum of $16,000, and that demand for payment was being made. The Sheriff of Kane County indicated on the execution that he received the document on May 26, 1965, at 4:00 p. m. On May 29, 1965, an appropriate demand was made on Norville by a deputy in the Sheriff's office. On July 4, 1965, defendant was arrested on a writ of capias ad satisfaciendum and three days later the instant section 72 petition was filed.

In his petition defendant admits that he was served with a summons on March 8, 1965. He alleges, however, that he "did not know of the entry of this judgment in this case until he was served with some paper and later arrested by the Kane County Sheriff on a writ of capias ad satisfaciendum on Independence Day, July 4, 1965." The petition goes on to allege that the primary complaint is insufficient because it only states that "loans" were made by McKeown to Iroquois but does not specify the dates of the loans, the amount, collateral if any, notes if any, and "consequently defendant was not aware that he must file an appearance and defend this suit." He baldly asserts that he relied on the other partners of Iroquois to respond to the suit. Defendant further alleges that he was not a party to any such loans and if they existed, the partners were acting outside the scope of the firm's business.

Attached to the section 72 petition was an answer to the complaint which was really a motion to strike.

Defendant denied that he was presently engaged in the business of Iroquois in that he had withdrawn from the partnership in 1963. He then moved to strike the remaining allegations as being conclusions and incapable of being answered.

Included as a part of the record is a copy of the Iroquois partnership agreement entered into July 10, 1962, and signed by the defendant Norville. One of the provisions of the partnership agreement provides:

> "The partnership shall begin on the 10th day of July, 1962, and continue until the 9th day of July, 1967, unless terminated sooner by agreement of a majority of the partners."

Norville was appointed General Manager of the partnership business and in charge of operating and managing it. The agreement went on to provide that:

> "Any member may elect to withdraw from the partnership upon giving the other parties thirty (30) days notice in writing by registered letter."

No facts showing compliance with the withdrawal provisions of the partnership agreement were pleaded in defendant's "Answer" attached to the section 72 petition.

In our view, there are two distinct aspects of the instant case: whether the judgment for $16,100 against Norville should be vacated pursuant to his sectoin 72 petition; whether the capias ad satisfaciendum should be quashed.

With respect to the judgment, the pleadings are sufficient to inform defendant of the claim against him. The complaint alleges that loans totaling $20,600 were made by McKeown to Iroquois and that defendant was an officer of the lender and a responsible partner of the borrowing entity. As stated in Hall v. Gruesen, 22 Ill App 2d 465, 161 NE2d 345 (1959):

■■■■■■■■■■

"(U)nder the Practice Act, pleadings are liberally construed with a view to doing substantial justice between the parties. (Ill Rev Stats 1957, c 110, par 33.) This is not an idle generality to which only lip service need be paid. It is the pronouncement of a burial service for the formalities of Chitty and the rigors of common-law pleading. The intricate and complex relationships of contemporary business enterprises make it impossible to state a modern mercantile arrangement within the bounds set by Chitty and his predecessors." (Pp 468–469.)

■ We are fully aware of the principles set forth in Ellman v. DeRuiter, 412 Ill 285, 106 NE2d 350 (1952), but Ellman does not relieve a party from showing that he has exercised due diligence in preventing the entry of the ex parte judgment. Colletti v. Schrieffer's Motor Service, Inc., 38 Ill App2d 128, 186 NE2d 659 (1962). In Colletti we held that a defendant who had been served with a summons and mailed a copy of the complaint to the general agent of his insurance carrier would not relieve the defendant of the burden of exercising due diligence in preventing an ex parte judgment from being entered against him. In the instant case, defendant admits that he was served with a copy of the summons. His statement that he relied on the other partners of Iroquois Development Company to file appearances and defend the action is no better than the allegation in Colletti that the summons was sent to the insurance broker. Indeed, Norville is even more guilty of a failure to exercise reasonable diligence to prevent entry of an ex parte judgment against him.

Norville further claims that he did not receive any notice of the existence of the judgment until he was arrested on July 4, 1965, however, the record indicates to the contrary. Within one week after the judgment was entered against Norville, he was served, according

to the records of the Sheriff of Kane County, with an execution. In his section 72 petition he admits that "he was served with some paper and later arrested by the Kane County Sheriff." This would seem to indicate that he acknowledges receipt of the execution served on him on May 29, 1965. Consequently, this is not a case in which a cloud is cast upon the entire proceedings because the plaintiff failed to serve execution within term time. Jansma Transport, Inc. v. Torino Baking Co., 27 Ill App2d 347, 169 NE2d 829 (1960).

■■ With respect to the right of plaintiff to have a capias ad satisfaciendum issued against the defendant, this issue is now moot. The purpose of the capias is to insure payment of the debt. The People ex rel. Escott v. Hoffman, 97 Ill 234, 236 (1881). Subsequent to filing the notice of appeal, defendant filed an appeal bond in which United Pacific Insurance Company obligated itself to the extent of $18,000 "to pay the above judgment creditor any part of the judgment which is not reversed and interest damages and costs." In the order approving the bond, the trial court found "the bond proffered being of sufficient security and having been examined by plaintiff's counsel." Since a bond sufficient to pay the instant judgment has been provided to insure plaintiff's recovery of the judgment, the capias should now be quashed.

For the foregoing reasons, the judgment of $16,100 against James P. Norville is affirmed and the cause remanded to the Circuit Court of Cook County with directions to quash the capias upon payment of the judgment.

Affirmed in part and remanded with directions.

BURMAN, P. J. and MURPHY, J., concur.