(No. 32292.—

ESTELLE ELLMAN *et al.*, Appellees, *vs.* GARRETT DE RUITER, Appellant.

*Opinion filed May 22, 1952.*

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, (ISAAC E. FERGUSON, of counsel,) for appellant.

NATHAN M. GOMBERG, of Chicago, (SIDNEY D. MISSNER, of counsel,) for appellees.

Mr. Chief Justice Daily delivered the opinion of the court:

Estelle Ellman and her husband, Philip Ellman, brought an action against Garrett De Ruiter in the county court of Cook County to recover damages for claims arising from an alleged assault by De Ruiter on Estelle Ellman. On November 24, 1950, defendant was defaulted and judgments were entered against him in favor of each plaintiff for $2000 and costs. More than thirty days after the date upon which the judgments were entered, defendant filed a motion, supported by affidavits, under section 72 of the Civil Practice Act, (Ill. Rev. Stat. 1949, chap. 110, par. 196,) to set aside the judgments on the ground that their entry had resulted both from an error of fact and from excusable mistake. A counteraffidavit and answer was filed by plaintiffs, and upon the pleadings thus made the county court granted the motion and vacated the judgments. The plaintiffs then appealed to the Appellate Court, which court reversed the order of the county court thereby reinstating the judgments. (*Ellman* v. *De Ruiter,* 344 Ill. App. 557.) This court has granted defendant's petition for leave to appeal.

The facts to be gathered from the entire record show that plaintiffs were tenants in a building owned by defendant and that on September 29, 1950, a controversy arose between Estelle Ellman and defendant over the ownership of a mirror. She alleges that defendant pushed her into a stair rail injuring her back, whereas he denies that he touched her. Philip Ellman, the husband, was not present. Soon after the occurrence Estelle filed a criminal complaint against defendant in the Municipal Court of Chicago charging an assault. On October 11, 1950, the court heard evidence in that cause and the arguments of attorney Nathan M. Gomberg, who represented the complaining witness, and of attorney Milford F. Henkel, who represented De Ruiter, then continued the matter until November 14.

The next circumstance occurred on October 25, 1950, when the civil suit for damages arising from the alleged assault was filed in the county court of Cook County. Under separate counts Estelle Ellman claimed $2000 actual damages and $2000 punitive damages, while Philip Ellman claimed $2000 damages apparently for loss of consortium. Gomberg also represented plaintiffs in this action. On the same day a summons was issued bearing a first return date of November 20, 1950, and a second return date of December 4, 1950. The summons was served on defendant on October 31, 1950, twenty days before the first return date. The following day, November 1, defendant took the summons to a firm of lawyers which had no connection with the attorney who was representing him in the criminal matter. There, a docket clerk employed by the firm erroneously recorded the summons as having been served on November 1, 1950. On the same day, still another employee of the firm phoned Gomberg and procured a copy of the complaint which was later returned when additional copies had been made. Because of the erroneous entry made by the docket clerk, it was not until December 4, the second return date, that defendant's attorneys filed an appearance in the civil cause and a motion to dismiss. In the meantime, however, Gomberg, without notice to defendant or his attorneys, appeared in the county court on November 24, at which time defendant was defaulted and the judgments as above described entered against him.

The next incident in the chain of events occurred on December 8, 1950, when there were further proceedings in the criminal matter before the Municipal Court. On that date attorney Robert S. Morris, who was employed by the firm which represented defendant in the civil suit, appeared and introduced himself to the court and to Gomberg, and made an offer of settlement in the civil case. The presiding judge continued the criminal cause to January 30, 1951, to enable the parties to settle their differences.

Gomberg, however, without revealing that default judgments had already been entered in the civil action, represented to Morris that he would not be ready to talk settlement until after the first of the year when he would be able to know the outcome of the criminal matter and the extent of Estelle Ellman's injuries. On January 4, 1951, after thirty days from the date of the default judgments had safely passed, Gomberg informed defendant's attorneys by telephone that default judgments had been entered on November 24, 1950.

Within a few days, defendant filed a motion to vacate and set aside the judgments setting forth the facts substantially as heretofore related, and contending that the county court entered the default judgments while under a misapprehension of fact regarding defendant's intention to contest plaintiffs' claims. It is his position that the court's misapprehension was induced by Gomberg's intentional failure to inform the court that a criminal cause was pending or that a firm of attorneys had manifested an intention of defending the civil action by procuring a copy of the complaint from Gomberg. As a further basis for relief, defendant contended that the filing of his appearance and answer on the second return day, instead of the first return day noted in the summons, was due to an excusable mistake, rather than negligence, therefore presenting an adequate ground for vacating the default judgments. One affidavit filed in support of the motion was executed by an attorney named Ferguson, who was also an employee of the firm representing defendant in the civil action, and set forth that when an inquiry was made of the judge who had entered the default judgments, the judge had stated that he was not informed of the criminal action nor of the fact that defendant's attorneys had procured a copy of the complaint. In a counteraffidavit, Gomberg averred that he had informed the judge that a criminal case was pending in which defendant was represented by counsel.

His counteraffidavit further set forth that the Chicago Daily Law Bulletin of November 25, 1950, had made public the entry of the judgments against defendant in the civil action.

Since the judge who had entered the default judgments had become ineligible, due to the expiration of his term of office, the motion to vacate was, of necessity, presented to and heard by another judge. Without indicating the exact grounds, the latter judge granted the motion and vacated the judgments.

On appeal, however, the Appellate Court reversed the order of the county court, holding that Gomberg's failure to inform the court of the criminal proceeding and of the fact that a firm of attorneys had procured a copy of the complaint in defendant's behalf, was not the concealment of such facts as would have precluded the court from entering the default judgments. With respect to the error of the docket clerk employed by defendant's attorneys, the Appellate Court held that no act or omission of plaintiffs had contributed to the error and that it was not an excusable mistake available as a ground for vacating the default judgments. Having reached its conclusion on the foregoing points, the court concluded its opinion in the following manner: "However lacking in fairness the conduct of plaintiffs' counsel in the municipal court on December 8, 1950, may have been, such conduct is not ground for vacating the judgments on defendant's petition. The statutory motion substituted for the writ of error *coram nobis* can only bring before the court rendering the judgment 'matters of fact not appearing of record, which, if known at the time the judgment was rendered, would have prevented its rendition.' *Jacobson* v. *Ashkinaze,* 337 Ill. 141. Matters arising subsequent to the rendition of the judgment cannot be urged. Plaintiffs' counsel wilfully concealed the entry of the default judgments until after the court lost the power to vacate them. This conduct cannot be condoned, but it is not ground for vacating the judg-

ments. Defendant's petition is not addressed to the equitable powers of the court. *Loew* v. *Krauspe,* 320 Ill. 244." We gather from this language that the court felt defendant was entitled to relief but that it was powerless to grant it under the statutory motion which has been substituted for the writ of error *coram nobis.*

A treatise found in 31 Illinois Law Review 644, tracing the development of the statutory motion which has been substituted for the common-law writ of error *coram nobis,* recalls that the writ of error *coram nobis* was an original writ issued out of chancery to the judges of the Court of the King's Bench commanding them to examine the record in a particular case for an alleged error in fact. Through its use, the record was subject to re-examination for errors of fact unknown to the court at the time of judgment and not inconsistent with the record. It was necessary, however, that the alleged errors of fact affect the validity and regularity of the legal decision itself, because in such case, the error of fact was presumed not to be the error of the judges and reversing was not reversing their own judgment, it being presumed that the court would not have rendered judgment had it known of the error. The earliest known use of the writ was to disclose misprision of the clerk, infancy, coverture or the death of a party. In addition it was often used as a procedural device to prevent a failure of justice, since the House of Lords and the Exchequer Chamber would review only errors of law. Despite some early recognition of the writ in the cases of *Kerr and Bell* v. *Whiteside,* Breese 390, and *Beaubien* v. *Hamilton,* 3 Scam. 213, courts of Illinois have not, since the decision of *McKindley* v. *Buck,* 43 Ill. 488, recognized the writ as being available for use in this State. The Practice Act of 1871, (Laws of 1871, p. 348,) and those which succeeded it in 1907, (Laws of 1907, p. 461,) and 1933, (Ill. Rev. Stat. 1933, chap. 110, par. 196,) have declared

that the writ of error *coram nobis* is abolished and have substituted a motion in its place.

While it has been held that the essentials of procedure remain the same despite the abolition of the writ, (*Mitchell v. King,* 187 Ill. 452,) the use of the motion has not been restricted to the narrow confines of its common-law antecedent. Rather, courts have encouraged the development of the statutory equivalent and permitted its use in new situations wherever such was consonant with the history of the common-law writ. For example, although insanity does not find express mention as a ground for the writ at common law, it has been given recognition in Illinois. (*Consolidated Coal Co. v. Oeltjen,* 189 Ill. 85.) Similarly, common-law treatises do not mention fraud or excusable mistake as sustaining a writ of error *coram nobis,* but such grounds have been declared sufficient to support the equivalent motion in the modern practice in this State where the fraud or mistake has the effect of preventing the litigant from making his defense. (*McKiernan v. Taylor & Lynch Cartage Co.* 263 Ill. App. 657; *Smyth v. Fargo,* 307 Ill. 300.) Further, we find that the motion has been used extensively as a procedural device to prevent injustice by making possible the vacation of judgments entered without notice to a party where the circumstances were such as to require specific notice. (*Jacobson v. Ashkinaze,* 337 Ill. 141.) Varying rules of court and factual situations have caused some fluctuations in this latter use of the motion as may be seen from an examination of the cases, among which are *Cramer v. Illinois Commercial Men's Ass'n,* 260 Ill. 516; *Straus v. Biesen,* 242 Ill. App. 370; *Rendorf v. Frye,* 250 Ill. App. 122, and *Swiercz v. Nalepka,* 259 Ill. App. 262.

The modern tendency of courts to extend the relief which may be granted under the motion which has been substituted for the common-law writ, and the justification for its expanded use, is best stated in *Bronson v. Schulten,*

104 U.S. 410, 26 L. ed. 797, in the following language: "There has grown up, however, in the courts of law a tendency to apply to this control over their own judgments, some of the principles of the courts of equity in cases which go a little further in administering summary relief than the old fashioned writ of error *coram nobis* did. This practice has been founded in the courts of many of the States on statutes which conferred a prescribed and limited control over the judgment of a court after the expiration of the term at which it was rendered. In other cases the summary remedy by motion has been granted as founded in the inherent power of the court over its own judgments, and to avoid the expense and delay of a formal suit in chancery. It can easily be seen how this practice is justified in courts of the States where a system has been adopted which amalgamates the equitable and common law jurisdiction in one form of action, as most of the rules of procedure do."

While our present Civil Practice Act has not effected a complete amalgamation of the practice and procedure in common-law and suits in equity in this jurisdiction, it is our opinion that there has been a fusion sufficient to enable a court of law, when the occasion demands it, to apply equitable principles in administering the summary relief available under the motion which has been substituted for writ of error *coram nobis*. Stated differently, it is our belief that the motion may, under our present practice, be addressed to the equitable powers of the court, when the exercise of such power is necessary to prevent injustice. Apart from the present case, we have found but one decision in this jurisdiction which has permitted the use of the statutory motion to be expanded to such an extent. In *Nikola* v. *Campus Towers Apartment Bldg. Corp.* 303 Ill. App. 516, a party sought to controvert a sheriff's return by a motion in the nature of a writ of error *coram nobis*. Although the desired relief was traditionally obtained by

filing a suit in chancery, the Appellate Court held that the action of the trial court in taking jurisdiction of the motion was in harmony with the provisions of the Civil Practice Act of 1933, which amalgamated practice and procedure in law and equity. The court held that it was not error to grant the relief by motion instead of telling the party to file a complaint in equity and to come back a few days later, when the relief would be granted. This court dismissed a petition for leave to appeal from the Appellate Court's decision. While the same factual situation is not presented, it is apparent that the principles upon which the function of the statutory motion was expanded in that case are equally applicable in this case. In addition to the procedural convenience which is pointed out in the *Nikola case,* there is patent need in the present case to employ the motion to prevent a failure of justice.

The pattern of conduct followed by plaintiffs' attorney after the default judgments were entered, and for which no justification has been offered in this or the lower courts, admits of no serious doubt that it was designed to mislead and lull the defendant until such time as the county court's power over the proceeding had ceased to exist at expiration of thirty days. While there was no duty on the attorney to notify defendant of the default judgments, fair dealing would require that he inform defendant of the defaults when the question arose instead of pursuing a course calculated to keep the defendant in ignorance until the time he could make a direct attack on the judgments had expired. Somewhat similar conduct was condemned in *McKiernan* v. *Taylor & Lynch Cartage Co.* 263 Ill. App. 657. While it occurred in a collateral proceeding and in a different court, counsel's imposition on the Municipal Court in suffering that court to continue the criminal action in the belief that a settlement could be effected in the civil proceeding, at a time when he well knew of the default judgments, could be described as an indirect abuse of the

processes of the county court. Considering the record in its entirety, we agree with the Appellate Court that such conduct cannot be condoned and that defendant is entitled to relief. To prevent a failure of justice and a further suit in equity, we conclude, for the reasons previously set forth, that it is within the spirit of the Civil Practice Act, and within the scope of the function of the motion which has replaced the writ of error *coram nobis,* that defendant be given summary relief in this proceeding.

The judgment of the Appellate Court which reversed the order of the county court of Cook County vacating the default judgments, is itself reversed and the cause is remanded to the county court for further proceedings.

*Reversed and remanded.*