Jansma Transport, Inc., an Illinois Corporation, and Ray Pankow, Plaintiffs-Appellants, v. Torino Baking Company, an Illinois Corporation, Defendant-Appellee, and Carl Stevens, Codefendant.

### Gen. No. 48,025.

First District, Third Division.
November 2, 1960.

Harring & Paulson, of Chicago (W. W. Ketchum and Robert L. Murray, of counsel) for appellants.

Ruff and Grotefeld, and Samuel S. Brown, of Chicago (James F. Whitfield and William S. Grotefeld, of counsel) for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order vacating judgments after the expiration of the thirty-day period. On June 22, 1959 default was entered for want of appearance of defendant Torino Baking Company (hereinafter called Torino) and on August 14, 1959 after an ex parte hearing, the court entered judgment in favor of plaintiff Jansma Transport, Inc., (hereinafter called Jansma) for $8045.77 and a judgment in favor of Pankow for $750. Execution was not issued until September 29, 1959, and was not served on Torino until October 7, 1959. Leave was given to file a petition to vacate, and a verified petition was duly filed on November 13, 1959. An answer and a reply to the answer were filed and the matter was heard on December 3, 1959. After a hearing upon testimony, verified pleadings and affidavits, the court found for Torino and entered the order vacating the default and the judgments. From that order, plaintiffs appeal. Carl Stevens, codefendant, is not involved in this appeal.

We will state the facts as derived from the evidence and the pleadings. On March 26, 1959 a tank-trailer loaded with fuel oil belonging to Jansma and driven by Pankow collided with a truck owned by Torino and driven by Stevens. Following the collision, the tank-trailer plunged into a two-story frame building, the lower floor of which was occupied by a tavern. As a result of the collision, six personal injury and two property damage claims were made against both Jansma and Torino. The respective insurance companies which had insured Jansma and Torino began investigations and the claims were discussed between the two claims departments. One claim was settled by the two companies paying equal shares. Suit was commenced in the Circuit Court of Cook County on behalf of two claimants on April 3, 1959 against both Jansma and Torino, claiming $250,000 on behalf of one claimant and $10,000 on behalf of the other. In that case summons was served on the registered agent of Torino. Attorneys for both Jansma and Torino (that is, those who represented them in the suits in which they were joined as defendants) actively entered into the defense of those cases and in the course of the proceedings took Pankow's deposition. He was asked whether he was injured in the accident and responded "No, I wasn't." All this occurred before and during the period when Jansma and Pankow instituted this suit against Torino and procured the judgments by default. Torino did not learn of the instant suit until after execution had been served upon it. In that period continuous negotiations, depositions and conferences were had between lawyers representing Jansma and the lawyers representing Torino defending against claims arising out of the accident, but no information was given to Torino by Jansma of its institution of the instant suit.

350

As before indicated, after judgment was entered, forty-five days elapsed before execution was issued and it was not served until October 7, 1959. This delay was deliberately planned, as acknowledged by counsel on oral argument and as can be inferred from the record, in order that defendant might not be informed of the judgment within the thirty-day period. The original summons was not served, but what purported to be an alias summons was returned served on "John Doe, Agent who refused to give true name." Joseph A. Clark, a deputy bailiff, testified that he served the summons on a lady who worked behind the counter and whom he had known for a period of years. He further testified on direct examination that he believed he served the execution on the same person on whom he had served the summons. He was asked whether he had ever served the same young lady before serving the summons in the instant case, and replied "I couldn't say exactly who I served."

The lady who received the execution was one Valerie Vitterelli. Her affidavit was submitted, in which she averred that she was 18 years old and had been employed by defendant since May 1959; that she came to this country on December 10, 1955 from Italy where she was born; that her knowledge of English was still very limited; that her duties were to sort, count and handle returned bread and to wait on any customers who came into the store to buy bread. She did not specifically deny that she received the summons.

The president of defendant company averred in a sworn petition that no service was had on the registered agent and secretary, president, or any other officer, plant manager, office manager, or any of the office personnel of defendant corporation, and affidavits of office and clerical personnel were attached.

Two principal issues are raised. Was valid service had on defendant corporation? If valid service was

had, was the conduct of plaintiffs' attorneys calculated to keep defendant in ignorance of the entry of the default judgment, and was this conduct of that pattern condemned in Ellman v. De Ruiter, 412 Ill. 285, 106 N.E.2d 350?

██ ██ Summons is required to be served upon a "registered agent or any officer or agent of said corporation found anywhere in the City of Chicago." (Sec. 13.3 of the Rules of the Municipal Court of Chicago, identical with Section 13.3 of the Civil Practice Act, Ill. Rev. Stat., ch. 110, sec. 13.3 (1959).) The return on the service shows it to have been made on "John Doe." If we recognize that John Doe is commonly used to describe a male whose name is unknown, it was still an improper return because the person on whom it is claimed that service was had was a female. It is also our opinion that the deputy bailiff's testimony was so conflicting, the court was warranted in concluding that the summons was not served upon any agent of the corporation.

 The character of agency for service of process has not been precisely defined. In 1 Nichols, Illinois Civil Practice, ch. 24, sec. 597 (1940), page 352, the author says:

"It would seem that if an agent is served, he must be one whose connection with the company is such, or whose employment is of such character that he impliedly had authority to receive process, and would be likely to inform the corporation of service of summons. While the wording of the statute is broad enough to include service on any agent, and the word 'agent' may well be considered the same as 'employee,' it is doubtful whether service upon a day laborer would be sufficient."

We know of no case in which employment and agency are considered identical. We think that the word as

used in this statute imports something more than an employee. We will not here attempt to define in generalized terms the character of agency required for purposes of service. It appears clear to us that the statute did not authorize service of a writ in a case of this character on an eighteen year old immigrant girl who was unfamiliar with the English language, who had been employed by defendant for only a month, whose duties were to receive returned loaves and to sell bread, and whose services were in no way related to the events out of which the litigation arose. Aside from that aspect of the case, it is our opinion that upon a petition to vacate a default judgment after the thirty-day period, it is proper for the court to take into consideration the nature of the service alleged to have been had as bearing on the equities of the case. Equitable principles apply to post-judgment remedies. Ellman v. De Ruiter, 412 Ill. 285, 106 N.E.2d 350; Frederick v. Maggio, 23 Ill.App.2d 292, 162 N.E.2d 590.

The next point made by Torino is that Jansma's conduct was calculated to keep Torino in ignorance of the entry of the default judgments, as condemned in Ellman v. De Ruiter, supra. This is based on the facts we have hereinbefore related—constant negotiations and conferences between representatives of plaintiffs and defendants and their co-operation in a joint settlement of one case growing out of the same accident. The principle established in the Ellman case, supra, is applicable. It is true that the attorneys who represented Jansma in the instant case were different from those who represented it in the other cases growing out of this accident. Jansma must be charged with knowledge of all the proceedings. It was all done on its behalf, and whether the insurance company acted through one or another set of attorneys representing it is not material. They aimed to profit by

353

the default judgments. Transcripts of those judgments were procured by attorneys representing Jansma, which Torino charges would be used in an attempt to establish a prior adjudication or collateral estoppel on the issue of negligence in the other cases. Jansma does not deny those charges.

It is argued by Jansma that there is no similarity between the instant case and Ellman v. De Ruiter, supra, "in facts, ethics or morality." No two cases are alike, and the facts are somewhat different in the instant case, but the difference points up a harsher and more unjust result if relief were denied. Here, the codefendants were involved in working together in a common cause—the defense and settling of a group of claims growing out of a joint accident. Intervention of insurance companies which took over the litigation may have produced a schizophrenic personality in Jansma, so that the cerebral left side did not know what the right side was doing, but that is not a pathological condition of which the court will take notice. The duty imposed by Ellman v. De Ruiter, supra, was not imposed on the attorneys as principals, but in their representative capacity, and the fact that the situation is more complicated in the instant case does not mitigate the offensive nature of the failure of one defendant, in the midst of co-operating with another, to advise the other it was about to cut the latter's throat quietly and effectively. Something more than the morals of a medieval market may reasonably be expected in the conduct of litigation.

■ One further matter deserves attention. It is frankly acknowledged that execution was delayed for the purpose of permitting the thirty-day period to expire. While no duty is imposed upon a party or counsel to sue out an execution promptly in order to inform a defendant of a default within the thirty-day period, yet failure to do so is a circumstance which

casts a cloud upon the entire proceeding. Ellman v. De Ruiter, supra, at page 293. On a petition to vacate, the court may properly take it into account in appraising the worth of the defense to the petition.

■ In arriving at our conclusions we have borne in mind the need for preserving the stability of judgments. On the other hand, the great increase in litigation in this county has placed such a burden on bailiffs and sheriffs that mistakes are bound to occur. It has also increased the number of defaults due to errors on the part of law clerks or lawyers. This has been evident in the large number of default cases which have come to us and to other courts of late. To mitigate that evil, co-operation within the profession is imperative.

Under the circumstances, it would be a gross injustice to subject defendant to liability without an opportunity to defend.

Judgment affirmed.

McCORMICK and DEMPSEY, JJ., concur.