Marguerite M. Bennett, Plaintiff-Appellant, v. Maryane Gollant, Alias Maryane Gallant, Individually, and d/b/a Fifth Season of Fashion, and Fifth Season of Fashion, Inc., an Illinois Corporation, Defendants-Appellees.

## Gen. No. 52,917.

First District, Second Division.

July 7, 1970.

Rehearing denied September 9, 1970.

Mitchell Edelson, Jr., of Chicago (Dennis Cunningham, of counsel), for appellant.

Arthur Aaron Ellis and Morris W. Ellis, of Chicago (Ellis and Ellis, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Marguerite Bennett, the plaintiff, had worked in a dress shop which was owned and operated by the defendant, Maryane Gollant. The defendant discharged the plaintiff in May 1966, and later invited her to come to the shop to collect money due her. When the plaintiff arrived, the defendant had her arrested on a charge of disturbing the peace. The plaintiff was later discharged from the court. She filed a complaint in two counts.

In Count I the plaintiff claimed she was entitled to salary earned at the time of the discharge, and that she was entitled to money wrongfully withheld by her

employer. She claimed that $630 had been withheld for income tax and social security, but that only $396.31 had been paid into plaintiff's account with the government. The complaint also alleged that the false swearing of the warrant for her arrest and her actual arrest were defamatory; that the arrest was used for the improper purpose of covering up her just claim for money due her. The prayer for relief was in the amount of $5,000 damages and $1,000 attorney's fees, as well as loss of time and wages incurred by her being compelled to attend court hearings as a result of the false charges. In her second count plaintiff sought punitive damages in the amount of $3,000, based on a special finding that malice was the gist of the action.

The suit was filed July 13, 1966. Summons was returned as having been personally served on the defendant on July 19, 1966. The return date was August 18, 1966, but no appearance or answer was filed by or on behalf of defendant by that time. On November 16, 1966, an order of default was entered against the defendant. Notice of the default and of a December 29, 1966 proveup was mailed to defendant by plaintiff's attorney. Judge Horan heard plaintiff's evidence and entered a judgment against the defendant for $9,381.69, as well as a special finding that malice was the gist of the action. Costs were charged to the defendant and an order was entered that execution issue against the body of the defendant.

The defendant failed to appear at a citation hearing, although a deputy sheriff's return indicated that she was personally served with notice of the hearing. On August 16, 1967, the plaintiff sued out a writ of capias ad satisfaciendum, which was delivered to the sheriff on August 18, and on August 22, the sheriff notified the defendant. The defendant surrendered to the sheriff and appeared before Judge Olson on September 6, 1967. The hearing was continued for three weeks upon de-

fendant's prayer for additional time to raise the money to pay the judgment.

On the continued date, the defendant filed a petition seeking to have the judgment vacated and the capias quashed. A hearing was set over for two days, and on the appointed day Judge Hermes indicated for the record that for the sake of his ruling he would assume that the defendant had been properly served. He then entered an order vacating the judgment and quashing the capias. This appeal is taken from that order.

The following is the petition filed by defendant under the provisions of section 72 of the Civil Practice Act (Ill Rev Stats 1965, c 110, § 72):

Now comes the Defendant, MARYANE GOLLANT, and says:

1. That an ex-parte judgment was entered in this cause on behalf of the Plaintiff against the Defendant.

2. That the Defendant, MARYANE GOLLANT was never served with summons in this case, and the first knowledge she had of the pendency of this suit is when she received a letter from the sheriff's office notifying her that if she did not appear in court, a warrant would be issued for her arrest. Said letter was received by the Defendant on August 28, 1967, notifying your Petitioner to appear on September 6, 1967.

3. That your Petitioner appeared in Room 1307 on said September 6, 1967, and was first informed that a judgment was entered against her.

4. That the Plaintiff in his cause of action failed and omitted to ask for a body execution against the Defendant in his Complaint at Law, and he is therefore precluded from being granted such relief.

5. That the Plaintiff's cause of action is based on false allegations of fact.

6. That the Defendant has a good and meritorious defense to the Plaintiff's cause of action and that she has used due diligence in moving to vacate the judgment and special findings entered in this cause, without her knowledge.

7. That the Plaintiff's cause of action is based on fraudulent allegations, none of which are true.

8. That the Defendant was never notified that she was in default in this cause, and no notice was ever sent to her or given to her, that the Plaintiff was to prove up damages.

WHEREFORE, the Defendant, MARYANE GOLLANT, prays that the ex-parte judgment entered in this cause be vacated and set aside, and that any special findings of malice be vacated and set aside; and that any capias ad satisfaciendum be quashed.

■ If we were to hold that this petition contains sufficient allegations to justify the setting aside of the judgment and quashing the capias, then few judgments could ever be considered final. The assertion that the plaintiff's allegations are all false and fraudulent is no more than an attempt to attack the judgment. The time to have raised that question was by answer to the plaintiff's complaint in the original action.

■ The defendant says she has a good and meritorious defense and has employed due diligence in moving to vacate the judgment, yet she does not state what the defense is, nor does she allege facts to support that claim. Her assertion that she was never served with notice of the action pending against her is a collateral attack on the returns by officers of the court. The allegations in the petition are nothing more than conclusions, and she has attempted nothing more than a collateral attack on a judgment already entered against her.

In Ellman v. De Ruiter, 412 Ill 285, 106 NE2d 350, the defendant filed a motion to vacate a judgment which had been entered against him. In support of his motion he set forth facts which indicated that he had retained a law firm to represent him, and that the clerk of that firm had erroneously recorded the summons served upon the defendant as of November 1, 1950, while it had in fact been served on October 31, 1950. Because of the error an appearance was not filed until a time beyond the actual return date. An employee of the law firm telephoned plaintiff's attorney to request a copy of the complaint which had been filed against the defendant. Meanwhile, plaintiff's attorney, without notice to the defendant or his attorneys, obtained a default judgment against the defendant. Subsequently, attorneys for plaintiff and defendant, respectively, appeared in criminal court for proceedings relevant to the same acts which gave rise to the civil proceeding. At that time the default judgment had already been entered for fourteen days. The attorney for defendant offered a settlement in the civil case, and the judge continued the case until January 30, 1951, so that they might arrive at a settlement. Plaintiff's attorney, without revealing that a default had already been entered against the defendant, told the defense attorney that he would not be able to discuss the matter until after the first of the year. He did not inform plaintiff's attorney of the default until January 4, 1951, a date past the thirty days from entry of the judgment.

Affidavits and counteraffidavits put squarely in issue the question as to whether the judge in the civil action had been informed that a criminal action was pending between the two parties over the same events, and whether the judge in the civil action had been informed that defendant had retained attorneys to represent him in the civil action.

The opinion in Ellman sets out an excellent short history of the development of section 72 of the Civil Practice Act from the writ of error coram nobis. The main problem facing the court was to determine whether the trial court, sitting as a court of law, possessed the authority to vacate the judgment, since that power historically could only be exercised in courts of chancery. At the time of the opinion the Civil Practice Act had not yet "effected a complete amalgamation of the practice and procedure in common-law and suits in equity . . . ." (Page 292.) It appears from the opinion that the court in Ellman had little hesitation in determining that the facts alleged in the petition were sufficient to justify a vacation of the default judgment, and the court's primary concern was the resolution of the issue as to whether a court of law could properly exercise such power since the remedy was equitable. However, the court concluded that the facts as alleged justified the setting aside of the judgment.

█ A comparison of the facts alleged in the petition in Ellman with the bare assertions in the instant case leads us to believe there was no justification for the trial court's setting aside the judgment of default in the case under review. In Stanley v. The Bank of Marion, 23 Ill2d 414, 178 NE2d 367, at 417, the court said:

> "Section 72 may not be used to again put in issue a factual question previously adjudicated but is available only to correct errors appearing upon the face of the record or to bring before the court facts not appearing in the record nor previously determined which, if known to the court at the time the judgment or decree was entered, would have prevented its rendition. Southmoor Bank and Trust Co. v. Willis, 15 Ill2d 388; People v. Sheppard, 405 Ill 79."

■ ■ Judgments are not to be set aside simply because a party adversely affected by such judgment comes into court under a section 72 petition and boldly asserts that the judgment was premised on false facts and that a good defense exists. Judgments are entitled to finality and it is only under such extenuating circumstances as quoted above that judgments will be set aside, although we would add to the above quotation that such facts not appearing of record which would otherwise justify vacating a judgment will not justify such vacation unless it is also shown that such facts could not reasonably have been disclosed at or prior to the time of entry of the judgment. This requires a showing of due diligence on the part of the party initiating the section 72 petition and requires far more than the mere assertion of due diligence, as was made in the present case.

■ It is our conclusion that the relief requested in the section 72 petition presented to the trial court in the case before us should have been denied because the petition was insufficient on its face. The only allegation that comes close to being sufficient is that concerning nonservice of summons, and even that is conclusory, fails to allege any supporting facts, and is directly contradicted by the returned summons bearing a deputy bailiff's affidavit that it was personally served on Maryane Gollant. Furthermore, the judge indicated that for purposes of his ruling he was presuming that the defendant had been served. Taking into consideration the premise of proper service, we are unable to see upon what ground the judgment could have been vacated. The defendant was properly served, and no excuse was offered for having failed to respond to the summons.

■ The defendant claims that the trial court invoked its equitable powers to strike the judgment. Such

231

a statement is insufficient and we must still seek the basis for the exercise of such power. Here we find none. It is not necessary to consider the other contentions raised by plaintiff. The order of September 27, 1967, vacating the judgment and quashing the capias ad satisfaciendum is reversed.

Reversed.

LYONS and BURKE, JJ., concur.