# Illinois Official Reports

## Appellate Court

---

### *Charles Austin, Ltd. v. A-1 Food Services, Inc.*, 2014 IL App (1st) 132384

---

| | |
|---|---|
| Appellate Court Caption | CHARLES AUSTIN, LTD., an Illinois Corporation, Plaintiff-Appellee, v. A-1 FOOD SERVICES, INC., an Illinois Corporation, JIAN BIN ZHENG, HUA LIN, and FOREVER GREEN FOOD GROUP, INC., Defendants-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1-13-2384 |
| Filed | December 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff food distributor added a second food vendor to the ongoing action plaintiff had initially filed against a vendor following the second vendor's purchase of the first vendor's assets, the trial court properly dismissed the second vendor's petition under section 2-1401 of the Code of Civil Procedure seeking relief from the default judgment plaintiff obtained against the second vendor after plaintiff filed an amended complaint against the second vendor on a theory of successor liability and the second vendor failed to appear or respond, since the second vendor's history of ignoring the court's orders and the properly served summons, failing to present its defense, and waiting for the closure of its bank account pursuant to citation proceedings established that it failed to exercise diligence in defending the original action and it lacked a meritorious defense; therefore, there was no need to consider its lack of diligence in filing its section 2-1401 petition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-396; the Hon. Margaret Brennan, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Anthony J. Peraica, Timothy Sprague, and Jennifer M. Hill, all of Anthony J. Peraica & Associates, Ltd., of Chicago, for appellants. |
| | Dean J. Lurie and John A. Ziegler, both of Stone Pogrund & Korey, LLC, of Chicago, for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

## OPINION

¶ 1 In the midst of litigation over a debt it owed plaintiff, Charles Austin Limited, defendant A-1 Food Services, Inc., sold all of its assets to Forever Green Food Group, Inc. Once Charles Austin learned of the transaction, it added Forever Green as a defendant to the ongoing lawsuit. Forever Green, however, did not appear or otherwise respond, and Charles Austin then secured entry of a default judgment against Forever Green in the amount of $186,688.72. Forever Green sought to vacate the judgment three months later, only after its bank account was frozen in a third-party citation proceeding.

¶ 2 Thereafter, Forever Green filed for relief from the judgment under section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), attacking the service on the grounds that its registered agent did not recollect receiving a copy of the summons or complaint from the Cook County sheriff. Forever Green further argued it (i) had a meritorious defense to the underlying lawsuit because, generally, a successor corporation is not liable for the debts of the transferor corporation, (ii) was diligent in defending itself in the original lawsuit, and (iii) was diligent in filing the section 2-1401 petition. The trial court denied Forever Green's section 2-1401 petition, rejecting all of its arguments and determining that its affidavits were untruthful to the point of appearing "almost embarrassing."

¶ 3 We agree with the trial court that service on Forever Green was proper and that Forever Green failed to establish the elements necessary under section 2-1401. Accordingly, we affirm.

¶ 4 BACKGROUND

¶ 5 Plaintiff, Charles Austin Limited, an Illinois corporation, distributes food and food-related products. On August 26, 2005, Charles Austin entered into a business loan agreement with A-1 Food Services, Inc. Charles Austin agreed to provide A-1 Food with a

credit line. Defendants Jian Bin Zheng and Hua Lin guaranteed the loan. The business loan agreement continued without incident until late 2011 when A-1 Food failed to pay invoices to Charles Austin. By the end of 2011, A-1 Food owed Charles Austin nearly $185,000.

¶ 6        In January 2012, Charles Austin filed a breach of contract complaint against A-1 Food, Zheng, and Lin. Although served, none of them appeared or responded to the complaint. After Charles Austin filed a written motion for default, the three defendants moved to vacate the defaults, which the trial court granted. At about this time, A-1 Food agreed to sell all of its assets to Forever Green. Philip Chow, an Illinois attorney and Forever Green's then-registered agent, acted as attorney for Forever Green in the transaction. On May 7, 2012, Zheng, the president of A-1 Food, certified that A-1 had no creditors at the time of sale.

¶ 7        On May 10, 2012, A-1 Food, Zheng, and Lin answered the complaint. About three months later, Charles Austin issued a subpoena to Forever Green seeking documents pertaining to the sale of assets. Forever Green responded through an attorney from Indiana. During this time, Zheng and Lin filed for bankruptcy.

¶ 8        In October 2012, Charles Austin filed an amended complaint, naming Forever Green a defendant under a successor liability theory. Charles Austin alleged that Forever Green assumed A-1 Food's liabilities under contract for the sale of assets and that the sale was a fraudulent transaction made to avoid A-1 Food's liabilities to Charles Austin. On October 29, 2012, the Cook County sheriff served Forever Green with a copy of the amended complaint and summons. The sheriff's affidavit of service stated that the sheriff served Chow as registered agent. Forever Green never appeared or responded to the amended complaint.

¶ 9        On January 10, 2013, Charles Austin orally moved for default and prove-up of damages against Forever Green. The trial court entered and continued the motion until February 22, 2013. On February 15, 2013, Charles Austin mailed to Chow a copy of the January 10 order, a notice of the motion for default judgment, and a copy of the written motion. Although the exact date is disputed, between January 10 and February 15, 2013, Forever Green changed its registered agent from Chow to Ke Y. Wang. On February 22, 2013, the trial court entered a default judgment against Forever Green.

¶ 10       Charles Austin began third-party citation proceedings to collect on the judgment and gave notice of the citation to Chow on May 9, 2013. Forever Green thereafter appeared and moved to vacate the default judgment under section 2-1401. 735 ILCS 5/2-1401 (West 2012). In its motion, Forever Green argued: (1) justice and equity required vacating the default judgment, it had a meritorious defense, and met the diligence requirements; (2) Charles Austin gave notice of the default motion to Chow and not its registered agent, Wang, or its Indiana counsel; and (3) lack of personal jurisdiction. In support, Forever Green attached affidavits of Chow and Wang. Chow claimed "not [to] recall ever receiving a copy of the Amended Complaint" and if he had, he "would have notified Forever Green, or its counsel, and ensured that it timely appeared and filed a responsive pleading." Wang claimed that he replaced Chow as registered agent "on or about February 15, 2013," was never served with a copy of the amended complaint, and had no knowledge of Charles Austin's motion for default until Forever Green's bank notified him that its account had been frozen.

¶ 11       The trial court denied Forever Green's motion to vacate the default judgment, concluding that service on Forever Green was proper. In doing so, the trial court rejected Forever Green's diligence arguments as well as its contention that it only became aware of the

lawsuit from the citation proceedings. Finally, as to the two affidavits, the trial court noted that they "were almost embarrassing to be presented to the Court. These people are putting a spin on things that's not appropriate[.] *** [Y]ou have to remember that you have a responsibility to tell your client *** you have to be truthful with the Court, and this was not truthful."

¶ 12                                    ANALYSIS

¶ 13     On appeal, Forever Green asserts: (i) lack of personal jurisdiction; and (ii) error by the trial court in denying the motion to vacate the default judgment. 735 ILCS 5/2-1401 (West 2012).

¶ 14                              Personal Jurisdiction

¶ 15     Without valid jurisdiction, a court cannot proceed or act over a case or its parties. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17. An appellate court reviews issues of personal jurisdiction *de novo. Id.*

¶ 16     A party can serve a private corporation by leaving a copy of the summons and complaint with the registered agent or any officer or agent of the corporation found anywhere in the State. 735 ILCS 5/2-204 (West 2012). An affidavit of service constitutes *prima facie* evidence of proper service. *Paul v. Ware*, 258 Ill. App. 3d 614, 617 (1994). Courts entertain every reasonable presumption in favor of the return of service. *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 24. To attack a default judgment for lack of personal jurisdiction, the challenging party must produce evidence impeaching the return of service by clear and convincing evidence. *Paul*, 258 Ill. App. 3d at 617. An uncorroborated affidavit merely saying that the defendant had not been personally served is not enough to refute the return of service. *Id.*

¶ 17     Forever Green claims its registered agent never received the complaint and summons from Charles Austin. In his affidavit, Forever Green's then-registered agent, Chow, attempts to rebut the Cook County sheriff's return by claiming he did "not recall ever receiving a copy of the Amended Complaint," and if he had been served, he would have "notified Forever Green, or its counsel, and ensured that it timely appeared and filed a responsive pleading."

¶ 18     Chow's affidavit is woefully deficient. Neither decision on which Forever Green relies, *Ellman v. De Ruiter*, 412 Ill. 285 (1952), and *Schnable v. Tuma*, 351 Ill. App. 486 (1953), warrants a contrary result. In *Ellman*, the supreme court vacated a default judgment on the basis of the court's equitable powers to prevent an injustice–the plaintiff's attorney's representations misled the defendant on status, which caused the defendant to refrain from filing a timely motion to vacate. *Ellman*, 412 Ill. at 293-94. In *Schnable*, a case largely confined to its facts, the defendant established no proper service of process through clear and convincing evidence. *Schnable*, 351 Ill. App. at 488-89, 491.

¶ 19     Forever Green's circumstances differ significantly from the facts in these cases. Unlike in *Ellman*, nothing in the record suggests that Charles Austin intended to or actually misled Forever Green or otherwise kept Forever Green in ignorance about the case's status. As the *Ellman* court explained, the plaintiff has no duty to notify the defendant of the default judgment unless the question arose. *Ellman*, 412 Ill. at 293. Forever Green contacted Charles Austin only after the beginning of third-party citation proceedings, nearly three months after

- 4 -

the trial court's February 22, 2013, entry of default judgment. And, unlike in *Schnable*, the only evidence Forever Green presented to impeach the return came from Chow's and Wang's affidavits, which the trial court considered, at best, dubious. In the words of the trial court, "[t]hese affidavits [Chow's and Wang's] were almost embarrassing to be presented to the Court. These people are putting a spin on things that's not appropriate[.] *** [Y]ou have to remember that you have a responsibility to tell your client *** you have to be truthful with the Court, and this was not truthful." Even putting the trial judge's comments aside, Chow's assertion that he did "not recall ever receiving a copy of the Amended Complaint" offers nothing that approaches the kind of substantial and competent evidence necessary to impeach the return of service, as addressed in *Pineschi v. Rock River Water Reclamation District*, 346 Ill. App. 3d 719 (2004), a case quite similar to this one.

¶ 20 In *Pineschi*, a deputy sheriff served a copy of the complaint and summons on the defendant. *Pineschi*, 346 Ill. App. 3d at 721. The defendant failed to answer or appear. *Id.* The trial court awarded the plaintiff a default judgment, and 22 days later, the plaintiff mailed a copy of the judgment to the defendant. *Id.* The defendant then filed a motion to vacate the default judgment, arguing the trial court lacked jurisdiction to enter the judgment because it had not been properly served. *Id.* Alternatively, the defendant sought discretionary relief under section 2-1401, attaching an affidavit from its registered agent in support. *Id.* The registered agent in an affidavit stated that she "did not recall receiving a summons or complaint," and, if she had, she would have followed normal business procedures to ensure the complaint would have been forwarded to the defendant's claims company. *Id.* The trial court denied the defendant's motion to vacate the default judgment. *Id.* at 722.

¶ 21 The appellate court affirmed, initially noting, "[i]f service was satisfactory, then there is no reason to conclude that defendant was diligent in handling plaintiff's lawsuit." *Id.* at 723. The court concluded that the agent's assertion that she could not recall receiving the complaint or summons did not meet the clear and convincing evidence standard to overcome the presumption of service. *Id.* at 724. Thus, service was proper, and "defendant did not show that its failure to appear or answer resulted from anything other than a lack of due diligence." *Id.*

¶ 22 Chow's affidavit bears close resemblance to the affidavit in *Pineschi*. That Chow does "not recall ever receiving a copy of the Amended Complaint" does not impeach the sheriff's return of service. Thus, the trial court had personal jurisdiction.

¶ 23 Section 2-401 Petition

¶ 24 Forever Green next argues that the trial court erred in denying its section 2-1401 petition by: (1) failing to consider Forever Green's meritorious defense, (2) finding that Forever Green lacked diligence in defending the original action, and (3) failing to consider Forever Green's diligence in presenting the section 2-1401 petition.

¶ 25 A petitioner is entitled to relief under section 2-1401 when it sets out specific factual allegations, by a preponderance of the evidence, of each of three elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the trial court in the original action; and (3) due diligence in filing the section 2-1401 petition. *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007).

¶ 26    The parties suggest we apply the abuse of discretion standard of review. But, a section 2-1401 analysis is two-tiered: (1) the issue of a meritorious defense is a question of law subject to *de novo* review and (2) if a meritorious defense exists, the issue of due diligence is subject to abuse of discretion review. See *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 10; *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 327-28 (2010); *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 206 (2010). We will apply the *de novo* standard in determining whether Forever Green presented a meritorious defense, and apply the abuse of discretion standard in reviewing whether it complied with the due diligence requirements.

¶ 27                                    Meritorious Defense

¶ 28    The amended complaint asserts Forever Green's liability under a successor liability theory. Specifically, Charles Austin claims that Forever Green purchased the business of A-1 Food subject to its known creditors and the claims of the present lawsuit, and that Forever Green and A-1 Food fraudulently entered the sale of assets to avoid liability for Charles Austin's claim.

¶ 29    As a general rule, a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation. *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45 (1997). This rule protects *bona fide* purchasers from unassumed liability. *Id.* at 345. There are, however, four exceptions: (1) an express or implied agreement of assumption; (2) the transaction amounts to a merger or consolidation of the purchaser or seller corporation; (3) the purchaser is a mere continuation of the seller; or (4) the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Id.*

¶ 30    Besides the general rule regarding a purchaser corporation's liability for the transferor corporation's debts, Forever Green claims there is no express or implied agreement of assumption because the contract for the sale of assets does not identify Charles Austin as a creditor.

¶ 31    Under the contract, A-1 Food agreed to sell all of its business assets "free and clear of any debts, mortgages, security interests or other liens or encumbrances except as herein stated." The contract required A-1 Food furnish Forever Green with a list of existing creditors at the time of sale and any persons asserting claims against A-1 Food, even if those claims were disputed. A-1 Food, by Jian Bin Zheng, certified that it had no creditors at the time of closing. Chow, Forever Green's attorney and then-registered agent, notarized the document at the sale. Based on a literal reading of the contract, Forever Green is liable only to those creditors listed by A-1 Food, which were "none at closing."

¶ 32    The creditor certification that A-1 Food had no creditors at closing was untruthful, and Forever Green had the capability and opportunity to perform its own due diligence to inquire whether any claims existed that could potentially affect its business and financial condition. Indeed, this lawsuit was on file nearly four months before the sale of assets. The record also shows that A-1 Food Services was involved in another lawsuit on similar grounds in the United States District Court for the Northern District of Illinois. Forever Green merely asserts, without citation, that "[y]ou cannot imply assumption of liabilities, where there are grounds to expressly provide for it, and A-1 Food affirmatively stated none." In light of the litigation surrounding A-1 Food, Forever Green's blind acceptance of A-1 Food's certification does not invalidate or nullify the falsity of the certification.

¶ 33    Forever Green further argues that it could bring a motion to dismiss for failure to state a cause of action by claiming Charles Austin failed to plead sufficient facts to suggest that the transaction was fraudulent, *i.e.*, actual intent to hinder, delay, or defraud any creditor of the debtor.

¶ 34    A fraudulent transfer occurs when the transfer is made with actual intent to hinder, delay, or defraud any creditor of the debtor. 740 ILCS 160/5(a)(1) (West 2012). The factors to determine intent to hinder, delay, or defraud include: (1) transfer or obligation was to an insider; (2) debtor retained possession or control of the property transferred after the transfer; (3) transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) transfer was of substantially all the debtor's assets; (6) debtor absconded; (7) debtor removed or concealed assets; (8) value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. 740 ILCS 160/5(b) (West 2012).

¶ 35    In a fact-pleading jurisdiction, like Illinois, a plaintiff must allege sufficient facts to bring its claim within the scope of the cause of action asserted. *Vernon*, 179 Ill. 2d at 344. "A complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what representations were made, who made them, and to whom." *Addison v. Distinctive Homes, Ltd.*, 359 Ill. App. 3d 997, 1000 (2005).

¶ 36    Charles Austin alleged in the amended complaint that A-1 Food sold its assets to Forever Green on May 1, 2012; the present action was pending at the time of sale; the contract implies that Forever Green purchased A-1 Food subject to its known creditors; Forever Green purchased the business subject to the present action; and, in the alternative, A-1 Food made the transaction for the purpose of escaping liability to Charles Austin. Viewing these allegations in the light most favorable to Charles Austin, the fourth exception to the rule of successor liability, fraud, is a probable inference. From the amended complaint, it follows that A-1 Food was indebted to Charles Austin; A-1 Food sold the business and its assets to Forever Green; Forever Green impliedly assumed the debts; A-1 Food sold its business assets to escape a potential judgment against it in favor of Charles Austin; and Forever Green was a party to the fraudulent transaction. Without addressing the merits of the exception, it can reasonably be inferred that Charles Austin properly pled the fourth exception to the general rule of successor nonliability.

¶ 37    Moreover, Forever Green presents no evidence or cogent legal arguments that counter the inference of a fraudulent transfer of corporate assets. The circumstances surrounding this transaction are suspect at best since A-1 Food sold all of its corporate assets after Charles Austin filed suit and kept the transfer from Charles Austin. In addition, it is unusual that a corporation attempting to purchase all of the assets of another corporation would not independently investigate the financials of the transferring corporation. Based on the scant evidence in the record, we cannot say that Forever Green established, by a preponderance of the evidence, that the transaction was not fraudulent. Hence, Forever Green does not have a meritorious defense to the original action brought against it by Charles Austin.

¶ 38                    Diligence in Presenting Defense or Claim in Original Action

¶ 39        Forever Green argues that the trial court erred by determining that Forever Green was not diligent in presenting its defense in the original action.

¶ 40        A party relying on section 2-1401 must have a reasonable excuse for failing to act within the appropriate time. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222 (1986). Section 2-1401 does not relieve a party of the consequences of its own mistakes or negligence. *Id.* A party relying on section 2-1401 must show that its "failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances [it] acted reasonably, and not negligently, when [it] failed to initially resist the judgment." *Id.* In determining the reasonableness of the offered excuse, all of the circumstances surrounding the entry of the judgment are considered, including the conduct of the litigants and their attorneys. *Id.* As mentioned, we review the trial court's determination of due diligence under an abuse of discretion standard.

¶ 41        Forever Green claims that Charles Austin did not effectuate proper service of the summons and complaint. We have already rejected this argument. Forever Green also claims that Charles Austin failed to provide sufficient notice of the motion for default. Specifically, Forever Green claims that Charles Austin's notice of motion for default, filed on February 15, 2013, went to Chow, who was no longer Forever Green's registered agent. Forever Green also alleges that "common sense and professional courtesy" obliged Charles Austin to inform the new registered agent, Wang, or Forever Green's Indiana counsel who responded to the September 2012 subpoena, regarding the default.

¶ 42        *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986), rejects Forever Green's argument. In *Airoom*, plaintiffs sued Airoom for breach of contract, and Airoom's sales manager was served with summons and a copy of the complaint at its place of business. *Airoom*, 114 Ill. 2d at 215. Airoom failed to answer or appear within 30 days. *Id.* Without providing notice to Airoom, the trial court entered plaintiffs' motion for a default judgment and continued the case for a hearing on damages. *Id.* Plaintiffs did not give Airoom notice of the hearing on damages, and the judgment was entered against Airoom. *Id.* at 216. Plaintiffs then initiated non-wage-garnishment proceedings against Airoom's bank to satisfy the judgment, after which Airoom filed a section 2-1401 petition. The trial court denied the petition on the basis that Airoom had not shown diligence. *Id.* at 220. The Illinois Supreme Court affirmed. *Id.* at 231.

¶ 43        The supreme court reasoned that Airoom had ample opportunity to avoid the default judgment by filing an answer or appearance, but, instead, relied on out-of-court negotiations with plaintiffs to settle the dispute which "did not establish any acceptable excuse for [Airoom's] failure to appear in court after summons was duly served on its agent." *Id.* at 224-25. The court further noted that, because Airoom never filed an appearance, plaintiffs were not required to provide notice of their intention to seek a default or of the default judgment. *Id.* at 226. As to the alleged breach of professional courtesy by failing to provide notice, the court determined such conduct "does not justify this court's easing the due-diligence requirement." *Id.* Once a court acquires jurisdiction over a party, the litigant has a duty to track the progress of his or her case. *Id.* at 227. The court finally noted that, although plaintiffs were silent about the entry of the default judgment, no evidence existed that the attorney fraudulently concealed the entry of the judgment or otherwise prevented

Airoom from knowing of it by "trick or contrivance." (Internal quotation marks omitted.) *Id.* at 228.

¶ 44    The chronological development of this case demonstrates that Forever Green, like Airoom, lacked diligence in presenting its defense to the trial court in the original action. Forever Green's then-registered agent was served with summons and a copy of the complaint on October 29, 2012; Forever Green failed to appear and answer; the trial court entered a default judgment on February 22, 2013; Charles Austin initiated third-party citation proceedings against Forever Green's bank on May 9, 2013; and Forever Green filed its section 2-1401 petition on June 5, 2013, only after the bank froze its bank account. Forever Green had ample opportunity to avoid the default judgment by filing its appearance or answer. The fact Chow did "not recall" being served is a meaningless excuse. Forever Green cannot escape its own negligence or indifference to this lawsuit. *Airoom*, 114 Ill. 2d at 224-25. Once the sheriff properly served Chow on October 29, 2012, Forever Green had to appear and either answer or otherwise plead, and, in addition, stay informed of the lawsuit's progress.

¶ 45    The trial court determined that Forever Green lacked diligence in presenting its defense in the original action. On January 10, 2013, before transfer of Forever Green's registered agent, the trial court entered and granted default and continued the matter for prove-up. Regarding Forever Green's diligence, the trial court said, "there is no diligence shown ***. There's a history here of ignoring the Court's orders, and ignoring the summons that was served on it. Then from February until May when we wait until citation proceedings and that's the first the client purportedly has heard about this, I find that not worthy of my trust or belief." We have read the record and agree with the trial court's conclusion.

¶ 46    Forever Green claims equity demands the court vacate the judgment. The Illinois Supreme Court, however, has explained, "[w]hen the legislature abolished the writs in favor of today's statutory remedy, it became inaccurate to continue to view the relief in strictly equitable terms. Moreover, this court's application of civil practice rules and precedent factored out any notions about a trial court's 'discretion' to do justice." *Vincent*, 226 Ill. 2d at 16. Thus, this court is not bound to reverse the trial court on equitable grounds. Regardless, the trial court observed that Forever Green failed to show diligence, ignored the summons properly served on it, and failed to appear or defend itself until after third-party citation proceedings began. No evidence indicates Forever Green's failure to appear and defend itself resulted from anything other than its own negligence.

¶ 47                    Diligence in Filing Section 2-1401 Petition

¶ 48    Lastly, Forever Green argues the trial court erred in finding it failed to exercise due diligence in filing the petition to vacate the default judgment. No bright-line rule exists for determining whether a petitioner acted diligently. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99-100 (2006). "[D]ue diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances." *Id.*

¶ 49    Forever Green filed its petition only after its bank account was frozen. Even if we were to find diligence, this conclusion would not be dispositive–a petitioner must establish all three elements to warrant relief under section 2-1401. *Vincent*, 226 Ill. 2d at 7-8. Because we conclude that Forever Green did not have a meritorious defense and was not diligent in defending the original action, we need not discuss this final element.

¶ 50 Failure to Comply With Trial Court's Standing Orders

¶ 51 Finally, Forever Green contends that Charles Austin violated the trial court's standing order and checklist. Forever Green, however, never raised this contention before the trial court and, thus, waived it and cannot bring it for the first time on appeal. *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109 (2006).

¶ 52 CONCLUSION

¶ 53 We affirm the judgment of the circuit court.

¶ 54 Affirmed.