THIRD DIVISION
December 8, 2010

No. 1-09-1749

STEVE DEI,                                      )        Appeal from the
                                                )        Circuit Court of
        Plaintiff-Appellant,                    )        Cook County.
                                                )
        v.                                      )
                                                )
TUMARA FOOD MART, INC.                          )        Honorable
                                                )        Lynn M. Egan,
        Defendant-Appellee.                     )        Judge Presiding.


        PRESIDING JUSTICE QUINN delivered the opinion of the court:

        Plaintiff Steve Dei appeals from an order of the circuit court granting defendant's

petition, pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS

5/2-1401) (West 2006)), to vacate an order of default and a default judgment entered against it

and from an order quashing his subpoena requests and granting a protective order.  On appeal,

plaintiff contends that this court should reinstate the default judgment because the trial court

erred in finding that plaintiff failed to properly serve defendant pursuant to section 2-204 of the

Code (735 ILCS 5/2-204 (West 2006)).  Plaintiff also contends that the circuit court erred in

quashing his subpoena requests, because they are relevant to the issue of whether service of

process was proper.  For the reasons set forth below, we affirm the circuit court.

        On June 7, 2007, plaintiff filed a complaint in the circuit court of Cook County alleging

that on February 17, 2007, he slipped and fell on ice and grease, breaking his tibia and fibula,

while walking toward the cashier at a gas station and mini-mart owned by defendant, Tumara Food Mart, Inc. (Tumara). On that same date, plaintiff filed a summons that directed that service be made on an "agent at Tumara Food Mart, Inc., 2941 East 83rd Street, Chicago, Illinois." On June 22, 2007, the sheriff's office served Ahmed Sylla,[1] an employee of Tumara at that location. No appearance was filed by defendant, and on October 4, 2007, plaintiff presented a motion for default. The motion was continued until November 15, 2007, at which time the Hon. John A. Ward entered an order of default against defendant and continued the case to January 4, 2008, for a prove-up hearing on damages. On January 4, 2008, after a presentation of evidence as to plaintiff's damages, the trial court entered judgment in favor of plaintiff and against defendant in the amount of $273,230.02. A memorandum of judgment was entered by the Hon. Lynn M. Egan on April 7, 2008.

On July 15, 2008, plaintiff filed a citation to discover assets, which was served on "Ahmed Minhaj and his wife," owners of the gas station/mini-mart. On August 11, 2008, defendant filed a special and limited appearance for the purpose of contesting service. On August 12, 2008, the Hon. Sheldon Gardner dismissed the citation to discover assets, with prejudice. Plaintiff filed a motion with the trial court to vacate the dismissal of the citation, which the court granted on August 19, 2008. The court also granted defendant's motion to stay the citation proceedings for 60 days to contest the underlying judgment

On August 27, 2008, defendant filed a petition pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2006)) to vacate the default judgment, asserting that plaintiff did not

---

[1]The return of service states that service was made on "Ahmed Silatt (agent)."

properly serve defendant pursuant to section 2-204 of the Code (735 ILCS 5/2-204 (West 2006)), because service of the summons and complaint was not made on either a registered agent or an officer of the corporation. Before filing an answer to defendant's petition, plaintiff was granted leave to conduct discovery with regard to issues raised by the petition.

On September 24, 2008, Thomas Walsh testified at his discovery deposition that he is the registered agent for Tumara Food Mart, Inc., that he has served in that capacity for 8 to 10 years, and that his status as registered agent has been provided to the Illinois Secretary of State. Walsh testified that he does not know anyone by the name of Ahmed Sylla and that no one by that name has ever been an officer or agent of Tumara for purposes of accepting service. Walsh stated that he has been Tumara's attorney since its inception, "know[s] all of the legal issues involved in Tumara Food Mart, Inc.," including "people who are authorized to accept service," and "Ahmed Silatt [sic] is not one of them." Walsh testified that he is not familiar with the daily operations at Tumara, but knows that Asif Nomani is Tumara's manager, that Nomani's son assists his father at the store, and that Minhaj Ahmed is the owner. He stated that he first became aware of plaintiff's lawsuit when Ahmed sent him a copy of a citation to discover assets.

Minhaj Ahmed testified at his deposition that he is the president, secretary, and sole shareholder of Tumara., which he has owned for approximately 15 years. Ahmed said that he is an absent owner and does not manage the day-to-day operations of the station but goes there once a month or once every few months. Ahmed testified that Asif Nomani is the manager at Tumara and that his son, Umair Nomani, helps with the daily operations of the store. He said that Asif and Umair Nomani are responsible for hiring and firing employees at Tumara. Ahmed testified

that he does not know whether a sheriff served the summons and complaint on a Tumara employee on June 22, 2007 and that he does not know Ahmed Sylla. Ahmed further testified that he first found out about plaintiff's complaint on July 15, 2008, when he received a citation to discover assets. He said that he then called his attorney, Thomas Walsh, and faxed him a copy of the documents. He then called the store to find out who Ahmed Sylla is and was told by Asif or Umair Nomani that Sylla was an employee at the gas station. Ahmed also testified that only he and Thomas Walsh were authorized to accept service on behalf of Tumara in June 2007.

On October 22, 2008, Asif Nomani testified at his deposition that in June 2007 he was the store manager for Tumara and that he hired Ahmed Sylla. In June 2007, Sylla was a cashier and "floor man," meaning that he was responsible for cleaning, stocking inventory, and keeping an eye on the car wash. Asif testified that prior to June 2007, Sylla did not receive instructions or training about what to do if he was served with legal papers while working at Tumara. On June 22, 2007, Asif was in Pakistan and testified that when he returned, in August or September, his son, Umair, informed him that the sheriff had served "some court papers" regarding a customer who had slipped and fallen on the premises. Umair told Asif that he sent the papers to the insurance company, but that the insurance company did not subsequently contact him. Asif testified that on January 4, 2008, he signed for the notice of default that was sent by certified mail and then faxed the notice to Tumara's insurance company agent.

On October 22, 2008 Umair Nomani testified at his deposition that he began working for Tumara in 2001 on a part-time basis until he became a full-time cashier/assistant manager in 2006. Umair's responsibilities include ordering inventory, making schedules, acting as cashier,

and customer service. Umair testified that sometime between May and June 2007, he found a summons and complaint on a counter or in a drawer near where the cashier usually works at Tumara. Umair said that he faxed the summons and complaint to Tumara's insurance agent. Umair testified that Sylla then told him that the previous day someone had given him the summons and complaint and that he put it on the counter.

Ahmed Sylla testified at his December 2, 2008, deposition, with the assistance of an interpreter, that on June 22, 2007, he was employed as a cashier for Tumara and was still working in that capacity on the date of his deposition. He testified that his first language is Wolof, and that he also speaks Arabic and French, and "a little bit" of English. He stated that while at work he speaks to some coworkers in French and to others in English, and that he speaks to customers in English. Sylla testified that while employed at Tumara he was never told that he was an authorized person to accept service on behalf of the corporation, nor does he understand what it means to be an authorized agent to accept legal papers on behalf of Tumara. He stated that no one at Tumara talked to him about legal papers. He said that he does not know Tom Walsh or Minhaj Ahmed. Sylla stated that he could not recall receiving a summons and complaint on June 22, 2007, but that whenever he received papers while at work, he did not open them but just placed them on the table, without informing anyone.

In a letter to Tumara's lawyer, dated December 2, 2008, plaintiff requested the following information: (1) Sylla's driver's license; (2) all social security numbers Sylla has used; (3) the name, address, and telephone number of Sylla's landlord; and (4) the name, address, and telephone number of Sylla's last employer. On December 5, 2008, plaintiff served a notice to

produce requesting "the entire personnel file of Ahmed Sylla (also called Ahmed Silatt), including but not limited to: all employment records, application for employment, references, background checks, performance evaluations, W2s, disciplinary actions, etc." On December 8, 2008, plaintiff issued a subpoena to the management company that owned the apartment where Sylla lived, seeking a copy of Sylla's tenant file including background checks, notices, references and leases. On that same date, plaintiff issued a subpoena to the City Colleges of Chicago for transcripts regarding courses Sylla took while a student at Olive Harvey College in 1997. On December 9, 2008, plaintiff issued a subpoena to the Illinois Secretary of State to obtain records and documents concerning Sylla's application for a driver's license, including copies of any written examinations taken by Sylla.

On December 11, 2008, defendant filed a motion to quash and for protective order asserting that plaintiff was seeking unnecessary and unwarranted personal information concerning Sylla and that the discovery requests were made in a harassing manner. On December 16, 2008, the trial court granted defendant's request to quash and for protective order regarding plaintiff's discovery requests for Sylla's college transcript, his tenant file, and his records on file with the Illinois Secretary of State.

On June 19, 2009, after both parties submitted briefs and arguments were heard, the trial court granted defendant's petition to quash service of summons and to vacate the default judgment. In that order, the trial court stated:

> "The record before this court is clear that Ahmed Sylla was not authorized by
> Tumara Food Mart, Inc. to accept service of process on its behalf. Moreover, there is

nothing in the record to contradict his testimony that he did not understand the nature or import of the documents received. Thus, the court did not obtain jurisdiction over Tumara Food Mart, Inc., rendering the orders of November 15, 2008 and January 4, 2007 [*sic*] void."

As a result, the court vacated its November 15, 2007, order of default, its January 4, 2008 default judgment and the April 7, 2008, memorandum of judgment. This appeal followed.

On appeal, plaintiff argues that the trial court erred in granting defendant's petition to vacate judgment because the summons and complaint were properly served on Ahmed Sylla, as an agent of the defendant corporation, and that the trial court erred in quashing his subpoenas seeking Sylla's college transcript, his tenant file, and his driver's license examination records.

As a preliminary matter, we must first address defendant's contention that this court should affirm the trial court because plaintiff has failed to sustain his burden to demonstrate any reversible error. In essence, defendant asserts that plaintiff's brief fails to present any legal theory upon which this court could base a reversal of the trial court's order vacating the default judgment and that it is " 'neither the function nor the obligation of this court to act as an advocate or search the record for error.' " People v. Williams, 385 Ill. App. 3d 359, 368 (2008), quoting Obert v. Saville, 253 Ill. App. 3d 677, 682 (1993).

In Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984), our supreme court addressed whether there is a "sufficiently complete record of the proceedings at trial to support a claim of error." The sufficiency of the record to address a claim of error turns on the question presented on appeal. In Foutch, the question was whether the trial court abused its discretion in denying

the motion to vacate an ex parte judgment. Foutch, 99 Ill. 2d at 391-92. Absent a transcript of the hearing below where evidence was heard, review for an abuse of discretion of the trial court's denial of the motion, where no specific grounds for the denial were given, was foreclosed. Foutch, 99 Ill. 2d at 392. Here, the question presented on appeal is whether plaintiff effectuated proper service of process on defendant. The record, which includes discovery depositions from individuals testifying about the events surrounding that service, is sufficiently complete to address the merits of that question on appeal.

Section 2-1401 of the Code establishes a comprehensive, statutory procedure that allows for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2-1401(a) (West 2006). Relief under section 2-1401 is predicated upon proof, by a preponderance of evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition. People v. Vincent, 226 Ill. 2d 1, 7-8 (2007). When a trial court enters a judgment on the pleadings or a dismissal in a section 2-1401 proceeding, review is de novo. Vincent, 226 Ill. 2d at 18.

Pursuant to section 2-204 of the Code (735 ILCS 5/2-204 (West 2006)), service upon a private corporation is obtained "(1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 735 ILCS 5/2-204 (West 2006). In the instant case, it is clear that neither Tumara's sole officer, Minhaj Ahmed, nor its registered agent, Thomas Walsh, was served with the summons and complaint. It is also clear that Ahmed Sylla was neither a registered agent nor an officer of defendant corporation. Therefore, in order for service on Sylla

to have been proper under the statute, he would have to be an agent of the corporation for purposes of accepting service.

Generally, the sheriff's return of service is prima facie evidence of service, which can be set aside only by clear and satisfactory evidence. Island Terrace Apartments v. Keystone Service Co., 35 Ill. App. 3d 95, 98 (1975). When a corporation is sued, however, a sheriff's return as to the fact of agency is not conclusive. Island Terrace, 35 Ill. App. 3d at 98. For service of process on a corporation to be effectively made upon an agent of defendant, such agent must have actual authority to accept service on behalf of the corporation. Slates v. International House of Pancakes, Inc., 90 Ill. App. 3d 716, 728 (1980). See also Cleeland v. Gilbert, 334 Ill. App. 3d 297, 301 (2002) (holding that service on insurance company's claims analyst is proper service on the company since the analyst was a responsible agent of the corporation); Knapp v. Bulun, 392 Ill. App. 3d 1018, 1030 (2009) (holding that service on a paralegal who worked for a corporate defendant's registered agent did not constitute proper service on the corporation since she was not designated as an agent to receive process). There appears to be some disagreement among Illinois appellate courts as to which party has the burden of proof on the presence or absence of the agency relationship. The majority of courts have held that the burden is on the plaintiff (see Slates, 90 Ill. App. 3d at 724; Harris v. American Legion John T. Shelton Post No. 838, 12 Ill. App. 3d 235 (1973)), but some courts have held that the defendant has the burden of proving that the person served was not an agent for purposes of accepting service (see Island Terrace, 35 Ill. App. 3d at 98; Millard v. Castle Baking Co., 23 Ill. App. 2d 51 (1959) (abstract of op.). Regardless of who had the burden of proof, because the evidence presented clearly shows that

Sylla was not an agent of Tumara for service of process, we find that the trial court did not err in granting defendant's section 2-1401 petition to quash service of the summons and complaint and vacate the order of default.

Defendant's primary argument on appeal appears to be that because Sylla was an employee of Tumara Food Mart, Inc., he had authority to accept service of the summons and complaint on behalf of the corporation. Plaintiff cites Megan v. L.B. Foster Co., 1 Ill. App. 3d 1036 (1971), to support his argument. In Megan, following an automobile accident, plaintiff filed suit in small claims court and process was served upon a receptionist at defendant's company. The corporation failed to appear and was subsequently defaulted, and a default judgment was entered. The defendant corporation's motion to vacate the default judgment was denied. On appeal, the Second District reversed the trial court but found that "service upon an intelligent clerk of a company who acts as a receptionist and who understood the purport of the service of summons was sufficient" to comply with the predecessor of section 2-204 of the Code. Megan, 1 Ill. App. 3d at 1038.

Plaintiff contends that like the receptionist in Megan, Sylla, was a "responsible" employee of Tumara and, therefore, qualified to act as an agent of the corporation. We disagree. Although we do not pass judgment on Sylla's intelligence, as the court did in Megan, it is clear from his testimony that he did not understand what it meant to be an agent of the corporation for purposes of accepting legal papers and that no one talked to him about what to do in the event that legal papers were served upon him. Further, the fact that upon receipt of the summons and complaint he left it on a table, unopened, as he did with all other papers and documents he

received while at work, is further evidence that he did not understand their import.

A case that is more closely aligned with the instant case is Island Terrace, 35 Ill. App. 3d 95. In Island Terrace, a plaintiff landlord file suit to recover possession of premises against its tenant, defendant Keystone Service Co., which operated a coin-operated laundry equipment business on the premises. Island Terrace, 35 Ill. App. 3d at 96. Summons was returned by the sheriff showing service on " 'Mrs. Breck, agent' " of defendant. Island Terrace, 35 Ill. App. 3d at 96. Defendant did not appear or answer the complaint and a default judgment was entered. Island Terrace, 35 Ill. App. 3d at 96-97. Defendant filed a petition to vacate the default judgment, arguing that it did not employ anyone by the name of "Breck" and that although it did employ a woman by the name of Dianne Brick, she was neither an agent nor an officer of the corporation and was not authorized to receive service of summons. Island Terrace, 35 Ill. App. 3d at 97. Accompanying the petition was the affidavit of Dianne Brick, who stated that as defendant's employee, she was responsible for answering phones and receiving customer complaints and was not authorized to accept legal documents on defendant's behalf. Island Terrace, 35 Ill. App. 3d at 97. She further stated that she did not recall being served with legal documents on the date listed on the return of service, that she did not talk to a sheriff or other person serving writs, and that on the afternoon of the day in question, she became violently ill and was taken home and then to a hospital. Island Terrace, 35 Ill. App. 3d at 97. Brick also asserted that if she did receive legal documents, she did not give them to an officer of the corporation and that she did not understand their import. Island Terrace, 35 Ill. App. 3d at 97. At the hearing on defendant's petition, Brick testified to the matters set forth in her affidavit.

Island Terrace, 35 Ill. App. 3d at 98. At the conclusion of the hearing, the trial court found that the evidence presented by defendant rebutted the prima facie return of service by the sheriff, and an order vacating the default judgment was entered. Island Terrace, 35 Ill. App. 3d at 98.

On appeal, this court affirmed the trial court, noting that "employment and agency generally are not considered identical." Island Terrace, 35 Ill. App. 3d at 98-99. For instance, although "[s]ervice on a secretary or receptionist 'who understands the purport of the service of summons' may be service on the corporation (Island, 35 Ill. App. 3d at 99 quoting Union Asbestos & Rubber Co. v. Evans Products Co., 328 F.2d 949 (7th Cir. 1964)), "service on a receptionist who does not understand her duty to deliver the summons to her employer may be in sufficient." Island, 35 Ill. App. 3d at 99, citing Gurtz Electric Co. v. Kamenir, 10 Ill. App. 3d 56 (1973) (abstract of op.). The court concluded, based on Brick's affidavit stating that she did not recognize or understand the import of the service of process and that she did not deliver it to an officer of the corporation, that "we cannot say that the trial court erred in finding that Dianne Brick was not defendant's agent for service of process." Island Terrace, 35 Ill. App. 3d at 99.

More recently, in Knapp v. Bulun, 392 Ill. App. 3d 1018 (2009), plaintiffs, who brought a medical malpractice action against several parties, including a doctor and the corporation through which the doctor conducted his medical practice, delivered a summons for discovery to a woman who was the paralegal and secretary to the registered agent of the corporation. This court found that this did not constitute proper service on the corporation because the paralegal was not designated as an agent to receive process. Knapp, 392 Ill. App. 3d at 1030.

In this case, Sylla, who was employed as a cashier, stated in his deposition that he does

not understand what it means to be an authorized agent for purposes of accepting legal papers for Tumara, that no one instructed him as to any procedures for handling the receipt of legal papers, that he does not recall receiving the summons and complaint, and that if he did, he put them on a table and did not forward them to an officer of the corporation. Based on the deposition testimony, it is clear that Sylla, like the receptionist in Island Terrace, did not understand the import of the service of summons or his duty to deliver it to his employer, and like the paralegal in Knapp, was not a designated agent for service of process.

Plaintiff also cites Gurtz Electric Co. v. Kamenir, 10 Ill. App. 3d 56 (1973) (abstract of op.), to argue that when determining whether an employee is an agent for purposes of accepting service of process, a court should look to the actions the employee took after process was served. However, aside from the fact that Gurtz is an abstract opinion with no precedential value, it fails to support plaintiff's argument. In Gurtz, a wage deduction summons was served on a judgment debtor's corporate employer's receptionist. In finding that service on the receptionist was not proper, this court considered the fact that the receptionist delivered the summons to the judgment debtor rather than the corporate employer to whom the summons was addressed. The court concluded that the receptionist did not understand the import of the summons and her responsibilities with respect to it and was not a proper agent for that purpose. Gurtz, 10 Ill. App. 3d 56.

In the instant case, plaintiff asserts that after receiving the summons and complaint, Sylla informed the assistant manager, Umair Nomani, who promptly faxed them to the insurance company. However, Sylla testified that he simply put the documents on a shelf, as he did with all

papers or documents delivered to the gas station, and they were subsequently found by Umair Nomani. Therefore, as in Gurtz, Sylla's actions after receiving the summons and complaint do not provide evidence that he understood their import or substance. Further, the fact that the summons and complaint were found by Umair Nomani, who like Sylla is neither a registered agent nor an officer of the corporation, and faxed to defendant's insurer do not demonstrate proper service on Tumara. In Isaacs v. Shoreland Hotel, 40 Ill. App. 2d 108 (1963), this court held that notice of a suit to an insurance company is not service of process on the insured. Issacs, 40 Ill. App. 3d at 115. Therefore, notification to Tumara's insurer did not relieve plaintiff of his duty to comply with the requirements of section 2-204 of the Code.

Based on the foregoing, we find that service of process on Ahmed Sylla was not proper service on the defendant corporation under section 2-204 of the Code, which precluded the trial court from exercising jurisdiction over defendant in order to enter a default judgment. Therefore, the court did not err in granting defendant's petition to vacate that judgment pursuant to section 2-1401 of the Code.

Next, plaintiff contends that the trial court erred in quashing its subpoena requests and entering a protective order. "A trial court's discovery order is usually reviewed for an abuse of discretion." Wisniewski v. Kownacki, 221 Ill. 2d 453, 457 (2006). A trial court does not have discretion to order discovery of information that does not meet the threshold requirement of relevance to matters actually at issue in the case. For purposes of discovery, relevance includes not only that which is admissible at trial, but also that which leads to admissible evidence. TTX Co. v. Whitley, 295 Ill. App. 3d 548, 557 (1998). Discovery should be denied where insufficient

evidence suggests the requested discovery is relevant. <u>Whitley</u>, 295 Ill. App. 3d at 557. At issue in defendant's section 2-1401 petition was whether Sylla was an agent of Tumara, authorized to accept service on the corporation's behalf. The information sought by plaintiff in his discovery requests, namely Sylla's ability to speak and understand English and his prior employment history, were not relevant to that issue. Therefore, we do not find that the trial court abused its discretion in granting defendant's motion to quash.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

NEVILLE and STEELE, JJ., concur.