2016 IL App (1st) 151876

No. 1-15-1876

Fifth Division
June 30, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| ASPEN AMERICAN INSURANCE COMPANY, as Subrogee of Eastern Fish Company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 14 L 7376 |
| INTERSTATE WAREHOUSING, INC., | ) ) ) | The Honorable John P. Callahan, Jr., |
| Defendant-Appellant. | ) ) | Judge Presiding. |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes concurred in the judgment and opinion.
Justice Lampkin dissented, with opinion.

**OPINION**

¶ 1     Plaintiff Aspen American Insurance Company brought this subrogation action against

defendant Interstate Warehousing, Inc.,[1] to recover losses sustained by Eastern Fish

Company (Eastern), which plaintiff insured. Eastern sustained the losses when the roof of a

warehouse owned by defendant collapsed. While the warehouse collapse occurred in Grand

Rapids, Michigan, plaintiff brought suit in Cook County, Illinois. Defendant moved to

_____

[1]In this order, we refer to both Interstate Warehousing, Inc., and its subsidiary Interstate Warehousing of Illinois, LLC. We refer to the former as defendant and the latter as IW Illinois.

dismiss the complaint, arguing that Illinois courts lacked personal jurisdiction over it. The trial court denied defendant's motion and defendant now appeals. For the following reasons, we affirm.

¶ 2                                                          BACKGROUND

¶ 3                                                        I. The Parties

¶ 4        Plaintiff is the subrogee of Eastern, which sources and imports fish products. It is undisputed on appeal that, on April 23, 2013, Eastern and defendant entered into an agreement for the storage of food products; that, pursuant to this agreement, Eastern delivered food products to defendant's warehouse in Grand Rapids, Michigan; and that part of the warehouse's roof collapsed on March 8, 2014, causing damage to the fish products.

¶ 5        Defendant, which is incorporated and has its principal place of business in the state of Indiana, advertises, on both its website's masthead and its letterhead,[2] the operation of several warehouses including a warehouse in Joliet, Illinois, and the warehouse in Grand Rapids, Michigan, which is the subject of this suit. Defendant's chief financial officer, Jeff Hastings, averred in an affidavit that defendant is "a 75% member of" IW Illinois, and that IW Illinois "operates" the warehouse in Joliet. Hastings also averred that Ryan Shaffer was the general manager of the Joliet warehouse, and that Shaffer was employed by defendant, rather than IW Illinois. In his affidavit, Shaffer averred that he was "responsible for the day-to-day operations at the Joliet warehouse."

¶ 6                                                        II. Complaint

¶ 7        On July 14, 2014, plaintiff filed a complaint in the circuit court of Cook County alleging: (1) breach of contract; (2) negligent bailment; (3) negligence; (4) gross negligence; (5)

---

[2]Letters displaying defendant's letterhead and a printout of defendant's website masthead were attached as exhibits to plaintiff's complaint.

spoliation of evidence; (6) intentional spoliation of evidence; (7) fraudulent concealment; (8) conversion; (9) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2014)); and (10) bailment in regard to the roof collapse and defendant's subsequent actions.

¶ 8        The complaint alleged that on March 8, 2014, the roof on defendant's warehouse in Grand Rapids, Michigan, collapsed. The collapse ruptured gas lines and caused an ammonia leak within the facility, which made one section of the warehouse dangerous to enter and caused damage to Eastern's fish products.

¶ 9        Attached to the complaint as exhibits was a series of letters between plaintiff and defendant. In these letters, defendant's letterhead advertised that defendant has a warehouse in Joliet. In a letter dated March 9, 2014, and addressed to Eastern, defendant described the accident and stated that Eastern's food products were contaminated or destroyed. In a letter dated March 14, 2014, and addressed to Eastern, defendant stated that the roof collapse was "an act of god," and that defendant was taking no responsibility for Eastern's loss. In a letter dated March 20, 2014, and addressed to defendant, plaintiff stated that it estimated that the value of the products Eastern lost in the collapse was $2.65 million. This letter also stated that defendant had a duty to maintain all evidence regarding the roof collapse and cargo loss and requested that Eastern or its agents be permitted to inspect that evidence.

¶ 10        Also attached to plaintiff's complaint was a copy of the contract that Eastern had entered into with defendant and a printout displaying the masthead from defendant's website, both of which advertise that defendant has a warehouse in Joliet. The complaint also alleged that evidence was destroyed before Eastern was able to have it inspected.

¶ 11                                   III. Motion to Dismiss

¶ 12        On March 19, 2015, defendant moved to quash service and dismiss plaintiff's complaint for lack of jurisdiction, arguing that the United States Supreme Court's recent decision in *Daimler AG v. Bauman*, 571 U.S. ___, 134 S. Ct. 746 (2014), rejected the traditional "doing business" test that Illinois courts had used for determining general personal jurisdiction. Defendant also claimed that plaintiff failed to properly serve defendant since plaintiff failed to leave a copy with defendant's registered Illinois agent or an officer or agent of defendant.

¶ 13        Attached to the motion to dismiss were affidavits signed by Jeff Hastings, the treasurer and chief financial officer of defendant, and Ryan Shafer, the general manager of defendant's warehouse in Joliet, Illinois. The affidavit of Jeff Hastings averred:

"I, Jeff Hastings, being first duly sworn upon my oath, state as follows:

1. The matters stated in this affidavit are matters within my personal knowledge.

2. I am the treasurer and Chief Financial Officer ('CFO') of [defendant] Interstate Warehousing, Inc.

3. Interstate Warehousing, Inc. is incorporated in Indiana.

4. Interstate Warehousing, Inc.'s principal place of business is located at 9009 Coldwater Rd., Fort Wayne, IN 46825.

5. Interstate Warehousing, Inc. is a 75% member of Interstate Warehousing of Illinois, LLC.

6. Interstate Warehousing of Illinois, LLC, is a limited liability company organized under the laws of Indiana with its principal place of business at 9009 Coldwater Road, Fort Wayne, Indiana 46825.

7. Interstate Warehousing of Illinois, LLC, operates a warehouse facility located at 2500 McDonough Street in Joliet, Illinois.

8. Ryan Shaffer is not the registered agent for, or an officer of, Interstate Warehousing, Inc.

9. Ryan Shaffer is employed by Interstate Warehousing, Inc. as a General Manger at the Joliet, Illinois warehouse.

10. Ryan Shaffer's responsibilities as General Manager do not include accepting or responding to the service of process.

11. Ryan Shaffer has never been provided any training regarding the import of a service of summons or how to handle any summons delivered to him."

¶ 14    The affidavit of Ryan Shaffer averred:

"I, Ryan Shaffer, being first duly sworn upon my oath, state as follows:

1. The matters stated in this affidavit are matters within my personal knowledge.

2. I am employed by [defendant] Interstate Warehousing, Inc. as the General Manger of a warehouse located in Joliet, Illinois.

3. As General Manager, I am responsible for the day-to-day operations at the Joliet warehouse with responsibility for overseeing general operations, including safety, maintenance, and customer service.

4. The managers of each operational division of the Joliet warehouse report to me.

5. I am not an officer of Interstate Warehousing, Inc.

6. I am not the registered agent for Interstate Warehousing, Inc.

7. On November 13, 2014, a gentleman arrived at the Joliet warehouse and indicated that he needed someone to sign for a delivery.

8. As General Manager, I accepted and signed for the delivery, believing it was a delivery directed to the Joliet warehouse.

9. Upon opening the package, I discovered that it contained documents that appeared to be related to a lawsuit against Interstate Warehousing, Inc.

10. My responsibilities as general manager do not include responsibility for responding to or handling legal matters.

11. I have received no training regarding what the significance of a summons and complaint or what to do with such documents.

12. I forwarded the documents to the attention of Jeff Hastings at Interstate Warehousing, Inc.'s corporate office in Indiana."

¶ 15      In its response, plaintiff argued that, because defendant had received authorization to transact business in Illinois from the Illinois Secretary of State pursuant to section 13.10 of the Business Corporation Act of 1983 (805 ILCS 5/13.10 (West 2012)), defendant is considered a resident of Illinois and therefore subject to general jurisdiction.[3] Plaintiff argues that, because defendant was "doing business" in Illinois, defendant "may be sued on causes of action both related and unrelated to its Illinois activities." *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 848-49 (2001).

¶ 16      Plaintiff also argued that its service of general manager Ryan Shaffer was proper, because Shaffer's responsibilities as general manager were so significant that he was imparted with the authority to receive service of process as an "agent" of defendant.

---

[3]Section 13.10 states that a foreign corporation granted authorization to do business in Illinois "shall be subject to the same duties, restrictions, penalties, and liabilities now or hereafter imposed upon a domestic corporation of like character." 805 ILCS 5/13.10 (West 2012).

¶ 17    On June 8, 2015, following argument, the trial court denied defendant's motion without stating its reasons in open court. The written order, dated June 8, 2015, stated only that defendant's motion was denied. Defendant filed a notice of appeal on July 7, 2015, and this appeal follows.

¶ 18                                         ANALYSIS

¶ 19    On appeal, defendant argues: (1) that the trial court erred in denying its motion to dismiss for lack of general personal jurisdiction and (2) that plaintiff failed to properly serve it with process. For the following reasons, we affirm.

¶ 20                          I. Service of Process Was Proper

¶ 21                              A. Standard of Review

¶ 22    For service of process on a corporation to be effective when made on an agent of the corporation, the agent must have *actual* authority to accept service on behalf of the corporation. *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 29 (citing *Dei v. Tumara Food Mart, Inc.*, 406 Ill. App. 3d 856, 862 (2010)).

¶ 23    There appears to be some disagreement among Illinois Appellate Courts as to which party has the burden of proof on the presence or absence of the agency relationship. *Dei*, 406 Ill. App. 3d at 863. The majority of courts have held that the burden is on the plaintiff (see *Slates v. International House of Pancakes, Inc.*, 90 Ill. App. 3d 716, 724 (1980); *Harris v. American Legion John T. Shelton Post No. 838*, 12 Ill. App. 3d 235 (1973)), but some courts have held that the defendant has the burden of proving that the person served was not an agent for purposes of accepting service (see *Island Terrace Apartments v. Keystone Service Co.*, 35 Ill. App. 3d 95, 98 (1975); *Millard v. Castle Baking Co.*, 23 Ill. App. 2d 51 (1959)

7

(abstract of opinion)). *Dei*, 406 Ill. App. 3d at 863. We do not have to resolve this issue because the result would be the same either way in this case.

¶ 24    We review *de novo* whether the trial court obtained personal jurisdiction. *JPMorgan Chase Bank, National Ass'n v. Ivanov*, 2014 IL App (1st) 133553, ¶ 45 (citing *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17). *De novo* consideration means we perform the same analysis that a trial judge would perform. *JPMorgan Chase Bank, National Ass'n v. Ivanov*, 2014 IL App (1st) 133553, ¶ 45 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 25                                B. Service

¶ 26    On appeal, defendant argues plaintiff failed to properly serve process on defendant. A private corporation may be served by leaving a copy of the process either (1) with its registered agent or (2) any officer or agent of the corporation found anywhere in the state. 735 ILCS 5/2-204(1) (West 2012).[4] Although defendant has a registered agent for service of process,[5] plaintiff did not serve process on that agent. Plaintiff instead served Ryan Shaffer, a general manager employed by defendant at the Joliet warehouse. Shaffer's affidavit avers that he is defendant's employee and that he is "responsible for the day-to-day operations at the Joliet warehouse with responsibility for overseeing general operations, including safety, maintenance, and customer service." The affidavit also avers that Shaffer received no training regarding the significance of a summons or what to do if served with one, but that he did immediately forward the papers to Jeff Hastings, defendant's CFO.

---

[4]Every domestic and foreign corporation which has "authority to transact business in this State" must "continuously maintain in this State *** [a] registered agent." 805 ILCS 5/5.05(b) (West 2012).

[5]The Illinois Secretary of State maintains a website (https://www.cyberdriveillinois.com) which contains a list of all corporations with authority to transact business in this state and their registered agents. The registered agent listed for defendant is CT Corporation System at 208 South LaSalle Street, suite 814, Chicago, Illinois.

¶ 27    In determining whether an employee of a corporation is an "agent" for the purposes of receiving service of process, courts ask: did the employee understand the import of the documents which he or she received? *Dei*, 406 Ill. App. 3d at 864. Thus, for example, this court has held that service on a secretary or receptionist is sufficient if he or she understands the import of the documents he or she is receiving, but service on a receptionist is insufficient if he or she does not understand the need to immediately deliver the papers to her employer. *Dei*, 406 Ill. App. 3d at 864. However, in a case where an affidavit of an employee averred "that she did not recognize or understand the legal import of service of process" and that "she did not deliver it to any officer of the corporation," this court held that she was not an agent for service of process. *Island Terrace*, 35 Ill. App. 3d at 99.

¶ 28    The facts of *Dei* are instructive to our analysis here. In *Dei v. Tumara Food Mart, Inc.*, a plaintiff served process on a cashier whose first language was Wolof, and who also spoke Arabic and French, and "a little bit" of English. *Dei*, 406 Ill. App. 3d at 860. The employee testified that he could not recall receiving a summons and complaint on June 22, 2007, "but that whenever he received papers while at work, he did not open them but just placed them on the table, without informing anyone." *Dei*, 406 Ill. App. 3d at 860. This court found that the employee was not an "agent" of the defendant corporation because "he did not understand what it meant to be an agent of the corporation for purposes of accepting legal papers." *Dei*, 406 Ill. App. 3d at 863. We further noted that "the fact that upon receipt of the summons and complaint he left it on a table, unopened, as he did with all other papers and documents he received while at work, is further evidence that he did not understand their import." *Dei*, 406 Ill. App. 3d at 863.

¶ 29    Here, unlike the cashier in *Dei*, Shaffer was a general manager and he understood the import of the process he was served with because he immediately sent it to Jeff Hastings, the CFO of defendant. Defendant cites *Dei* for the proposition that Shaffer's lack of training regarding what to do with a summons or complaint means that he cannot be considered an agent. *Dei*, 406 Ill. App. 3d at 863 (finding that an employee was not an agent of the defendant corporation, in part because "no one talked to him about what to do in the event that legal papers were served upon him"). However, the court in *Dei* stressed the employee's lack of understanding concerning what do with the service rather than his lack of formal training. *Dei*, 406 Ill. App. 3d at 865. The cashier in *Dei* left the summons and complaint "on a table, unopened, as he did with all other papers and documents," which the court cited as "evidence that he did not understand their import." *Dei*, 406 Ill. App. 3d at 863. In contrast, Shaffer's affidavit indicates that, despite any lack of training, he knew exactly what to do with them: forward them promptly to defendant's corporate office.

¶ 30    Defendant cites *Jansma Transport, Inc. v. Torino Baking Co.*, 27 Ill. App. 2d 347, 352 (1960), for the proposition that in order for an employee to be considered an agent for the purposes of service of process, his "employment [must be] of such character that he impliedly had authority to receive process." (Internal quotation marks omitted.)

¶ 31    However, the character of the employment in *Jansma Transport* varied markedly from the instant case. In *Jansma Transport*, the plaintiff served process on an 18-year-old Italian immigrant with limited knowledge of English who had been an employee for only six months. *Jansma Transport*, 27 Ill. App. 2d at 351. Her duties were simply to "sort, count and handle returned bread and to wait on any customers who came into the store to buy bread." *Jansma Transport*, 27 Ill. App. 2d at 351. This court held that plaintiff's service of process

was insufficient in light of the employee's age, understanding of the English language, and experience within the corporation as to legal matters. *Jansma Transport*, 27 Ill. App. 2d at 352-53. We noted that, while this statute is relatively vague as to the meaning of "agent," the "word as used in this statute imports something more than an employee." *Jansma Transport*, 27 Ill. App. 2d at 352-53. See also *Cleeland v. Gilbert*, 334 Ill. App. 3d 297, 301 (2002) (holding that service on insurance company's claims analyst is proper service on the company since the analyst was a responsible agent of the corporation).

¶ 32    Here, Shaffer is not simply an employee of defendant. Unlike the employees in both *Jansma Transport* and *Dei*, who were a counter clerk and a cashier respectively, Shaffer is the general manager of a warehouse. His affidavit avers that the managers of each operational division of the warehouse report to him, and that he is responsible for the day-to-day operations of the warehouse. Here, Shaffer is "more than an employee": he is a general manager with supervisory authority. *Jansma Transport*, 27 Ill. App. 2d at 352-53.

¶ 33    Because Shaffer was a general manager and understood the import of the summons that he received, the trial court did not err in determining that Ryan Shaffer was an "agent" who could receive service of process. 735 ILCS 5/2-204(1) (West 2012).

¶ 34                                II. Long Arm Jurisdiction

¶ 35                                A. Standard of Review

¶ 36    When a trial court decides a jurisdictional question solely on documentary evidence and without an evidentiary hearing, as occurred in this case, our review is *de novo*. *Russell v. SNFA*, 2013 IL 113909, ¶ 28.

¶ 37    When a court considers whether it should exercise personal jurisdiction over a nonresident defendant, it is the plaintiff who bears the initial burden to establish a *prima facie*

11

case for exercising jurisdiction. *Russell*, 2013 IL 113909, ¶ 28. We resolve any conflicts in the pleadings and affidavits in favor of the plaintiff seeking jurisdiction, "but the defendant may overcome [the] plaintiff's *prima facie* case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction." *Russell*, 2013 IL 113909, ¶ 28. If facts alleged in a defendant's affidavit contesting jurisdiction are not refuted by a counter-affidavit filed by the plaintiff, then those facts are accepted as true. *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 248 (1981).

¶ 38     In reviewing the circuit court's decision on appeal, " 'this court reviews the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct.' " *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18 (quoting *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24).

¶ 39                    B. The Illinois Long-Arm Statute

¶ 40     Section 2-209 of the Code of Civil Procedure (Code) (735 ILCS 5/2-209 (West 2012)) is commonly referred to as "the Illinois long-arm statute" and it "governs the exercise of personal jurisdiction by an Illinois court over a nonresident." *Russell*, 2013 IL 113909, ¶ 29. "Historically, [our supreme] court has employed a two-part analysis in deciding a jurisdictional issue under the long-arm statute, first determining whether a specific statutory provision of section 2-209 has been satisfied, and then determining whether the due process requirements of the United States and Illinois Constitutions have been met." *Russell*, 2013 IL 113909, ¶ 29 (citing *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990)).

¶ 41     On appeal, plaintiff argues that defendant's operation of a warehouse in Joliet, Illinois satisfies either subsection (b)(4) or subsection (c) of the Illinois long-arm statute. 735 ILCS

5/2-209 (West 2012). Subsection (b)(4) states that an Illinois court may exercise jurisdiction in any action within or without the state against any person who "[i]s a natural person or corporation doing business within" Illinois. 735 ILCS 5/2-209(b)(4) (West 2012). Section (c) is known as a " 'catch-all provision' " which permits Illinois courts to " 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " *Commercial Coin Laundry Systems v. Loon Investments, LLC*, 375 Ill. App. 3d 26, 29 (2007) (quoting *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 561 (2006), quoting 735 ILCS 5/2-209(c) (West 2004)). Accordingly, " 'if the contacts between a defendant and Illinois are sufficient to satisfy both federal and state due process concerns, the requirements of Illinois' long-arm statute have been met, and no other inquiry is necessary.' " *Solargenix Energy, LLC v. Acciona, S.A.*, 2014 IL App (1st) 123403, ¶ 27 (quoting *Cardenas Marketing Network, Inc. v. Pabon*, 2012 IL App (1st) 111645, ¶ 29).

¶ 42                                    III. Illinois Due Process Clause

¶ 43    We consider the due process issue solely under the federal due process clause. The Illinois Supreme Court has declined to consider "the extent, if any, that Illinois due process protections differ from federal due process protections on the issue of personal jurisdiction." *Russell*, 2013 IL 113909, ¶ 33. Our supreme court declined to consider this question because "[d]efendant, as the party challenging personal jurisdiction here, does not argue that it is entitled to greater due process protections under the Illinois due process clause and long-arm statute." *Russell*, 2013 IL 113909, ¶ 33.

¶ 44    Similarly, in defendant's brief to this court, defendant does not argue that the Illinois due process clause provides him with greater protections than the federal due process clause. Thus, we consider only the federal due process clause.

¶ 45                          IV. Federal Due Process Clause

¶ 46          In the seminal case of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the United States Supreme Court recognized two different types of personal jurisdiction. The first, specific jurisdiction, occurs when the suit "arise[s] out of or relate[s] to the defendant's contacts with" the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

¶ 47          The second type of personal jurisdiction is general jurisdiction. General personal jurisdiction exists in " 'instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit … *on causes of action arising from dealings entirely distinct from those activities*.' " (Emphasis in original.) *Daimler AG v. Bauman*, 571 U.S. ___, ___, 134 S. Ct. 746, 760 (2014) (quoting *International Shoe*, 326 U.S. at 318). When courts consider whether they may subject a foreign corporation to general personal jurisdiction, the proper inquiry is "whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.' " *Daimler AG v. Bauman*, 571 U.S. ___, ___, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The facts of *Goodyear* and *Daimler* illustrate what it means to be "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, (2011); *Daimler AG v. Bauman*, 571 U.S. ___, ___, 134 S. Ct. 746, 761 (2014).

¶ 48          In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the United States Supreme Court clarified the limits of general jurisdiction. *Goodyear*, 564 U.S. 915. In *Goodyear*, two United States citizens were killed in a bus accident in France. *Goodyear*, 564 U.S. at 918. The decedents' parents brought suit in North Carolina against The Goodyear Tire and Rubber

Company, and its Turkish, French and Luxembourgian subsidiaries. *Goodyear*, 564 U.S. at 518. Holding that North Carolina courts could not exercise general personal jurisdiction over Goodyear's foreign subsidiaries, the Court explained that, although a small percentage of tires manufactured by the foreign subsidiaries were distributed in North Carolina, the subsidiaries' contacts with North Carolina fell short of " 'the continuous and systematic general business contacts' necessary to empower North Carolina to entertain suit against them on claims unrelated to anything that connects them to the State." *Goodyear*, 564 U.S. at 929 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

¶ 49     In *Daimler AG v. Bauman*, a group of Argentinian citizens brought suit in California against Daimler, a German corporation, alleging that an Argentinian subsidiary of Daimler had collaborated with state security forces during Argentina's "Dirty War" to kidnap, detain, torture, and kill plaintiffs or plaintiffs' family members between 1976 and 1983. *Daimler*, 571 U.S. at ___, 134 S. Ct. at 751. When Daimler moved to dismiss the suit for lack of general personal jurisdiction, plaintiffs argued that the California contacts of Daimler's United States subsidiary were sufficient to subject Daimler to general personal jurisdiction in California. *Daimler*, 571 U.S. at ___, 134 S. Ct. at 752. The trial court granted Daimler's motion, but the Ninth Circuit Court of Appeals reversed. *Daimler*, 571 U.S. at ___, 134 S. Ct. at 753.

¶ 50     The United States Supreme Court reversed the Ninth Circuit and held that, even if the California contacts of Daimler's United States subsidiary were imputed to Daimler, Daimler's contacts with California were still too "slim" to subject it to general personal jurisdiction in California courts. *Daimler*, 571 U.S. at ___, 134 S. Ct. at 760. In order for a court to exercise general personal jurisdiction over a foreign or sister-state corporation, that

15

"corporation's 'affiliations with the State [must be] so "continuous and systematic" as to render [it] essentially at home in the forum State.' " *Daimler*, 571 U.S. at ___, 134 S. Ct. at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

¶ 51 The Court noted that, with respect to a corporation, "the place of incorporation and principal place of business are 'paradig[m] … bases for general jurisdiction.' " *Daimler*, 571 U.S. at ___, 134 S. Ct. at 760 (quoting Lea Brilmayer, Jennifer Haverkamp & Buck Logan, *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 735 (1988)). The Court acknowledged, however, that "*Goodyear did not* hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums." (Emphasis added and in original.) *Daimler*, 571 U.S. at ___, 134 S. Ct. at 760. Nevertheless, the Court rejected the plaintiffs' calls for the Court to "look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in *every* State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' " (Emphasis added.) *Daimler*, 571 U.S. at ___, 134 S. Ct. at 760-61. The Court labeled this argument as "unacceptably grasping" and found that neither entity was "at home" in California. *Daimler*, 571 U.S. at ___, 134 S. Ct. at 761. Allowing California courts to exercise general personal jurisdiction over Daimler would be "exorbitant" and would "scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " *Daimler*, 571 U.S. at ___, 134 S. Ct. at 761-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

¶ 52 In a footnote, the Court explained that general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that

operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at ___ n.20, 134 S. Ct. at 762 n.20. The Court further noted that "[n]othing in *International Shoe* and its progeny suggests that 'a particular quantum of local activity' should give a State authority over a 'far larger quantum of *** activity' having no connection to any in-state activity." *Daimler*, 571 U.S. at ___ n.20, 134 S. Ct. at 762 n.20 (quoting Meir Feder, *Goodyear, "Home," and the Uncertain Future of Doing Business Jurisdiction*, 63 S.C. L. Rev. 671, 694 (2012)).

¶ 53    As we noted above, when a court considers whether it should exercise personal jurisdiction over a nonresident defendant, it is the plaintiff who bears the initial burden to establish a *prima facie* case for exercising that jurisdiction, and we resolve any conflicts in the pleadings and affidavits in favor of the plaintiff. *Russell*, 2013 IL 113909, ¶ 28. Defendant may then "overcome [the] plaintiff's *prima facie* case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction." *Russell*, 2013 IL 113909, ¶ 28.

¶ 54    Plaintiff has established a *prima facie* case for exercising jurisdiction over defendant. Attached to plaintiff's complaint was a printout that displays the masthead from defendant's website, which advertises that defendant has a warehouse in the Chicago area. Plaintiff also presented a contract and multiple letters from defendant which advertise that defendant has a warehouse in Joliet, Illinois. In its response in opposition to defendant's motion to dismiss, plaintiff attached a printout from the Illinois Secretary of State's website which shows that defendant has been authorized to do business in Illinois since November 15, 1988.[6] See

---

[6]Defendant's "Corporation File Detail Report," http://www.ilsos.gov/corporatellc (last viewed Apr. 26, 2016) (search for "Interstate Warehousing, Inc." in the "CORP/LLC-CERTIFICATE OF GOOD STANDING" application). "[R]ecords from the Illinois Secretary of State's office *** are public records that this court may take judicial notice of ***." *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938 (1998). See also *Garrido v. Arena*, 2013 IL App (1st)

*Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938 (1998) ("records from the Illinois Secretary of State's office *** are public records that this court may take judicial notice of"). This evidence is sufficient to make a *prima facie* showing that defendant has affiliations with Illinois that are "so continuous and systematic" as to render it essentially "at home" in Illinois.

¶ 55     Our finding is supported by the reasoning in *Alderson v. Southern Co.*, 321 Ill. App. 3d 832 (2001). In *Alderson*, a coal-dust explosion occurred in a power plant located in Indiana. Plaintiffs brought a personal injury suit in Illinois against nine defendant corporations, none of which were incorporated or had their principal place of business in Illinois. *Alderson*, 321 Ill. App. 3d at 835-36. Plaintiffs alleged that they all operated the power plant in Indiana. *Alderson*, 321 Ill. App. 3d at 836. Limited jurisdictional discovery revealed that the defendant corporation which owned the power plant had entered into a series of contracts with a major utility company, pursuant to which the defendant corporation pledged its normal operating capacity of energy to the utility company for 15 years. *Alderson*, 321 Ill. App. 3d at 837. The defendant understood that "most, if not all" of that output would be utilized in Illinois. *Alderson*, 321 Ill. App. 3d at 838. The trial court found that the defendant who contracted with the utility company was subject to general jurisdiction in Illinois courts. *Alderson*, 321 Ill. App. 3d at 844. This court affirmed, holding that, though the defendant did not have offices in Illinois, defendant's contract to supply energy to Illinois for 15 years was continuous and systematic enough to "support the assertion of general jurisdiction over [it]." *Alderson*, 321 Ill. App. 3d at 858.

---

120466, ¶ 35; *JP Morgan Chase Bank, N.A. v. Bank of America, N.A.*, 2015 IL App (1st) 140428, ¶ 11 n.1.

¶ 56 Here, plaintiff made a *prima facie* showing that defendant's ties to Illinois were even more substantial than the Illinois ties of the defendant in *Alderson*. Plaintiff produced evidence showing that defendant advertises the warehouse in Joliet as its own, that defendant's employee is the general manager of the Joliet warehouse, and that defendant has been licensed to transact business in Illinois for 27 years. The burden then switched to defendant to show that its contacts were not sufficiently continuous and systematic enough to "support the assertion of general jurisdiction over [it]." *Alderson*, 321 Ill. App. 3d at 858.

¶ 57 In response, defendant's motion to dismiss claimed that defendant's state of incorporation and its principal place of business were in Indiana. Attached to the motion were affidavits from defendant's CFO and the general manager of the Joliet warehouse averring that the Joliet warehouse was operated by IW Illinois, a limited liability corporation in which defendant has a 75% stake. The affidavits also stated that the general manager of the Joliet warehouse is an employee of defendant, that he is "responsible for the day-to-day operations at the Joliet warehouse," and that managers of each operation division of the Joliet warehouse report to him.

¶ 58 By contrast, in *Daimler*, the defendant presented evidence of the amount of business that it did within the state of California. The Court noted the California sales of Daimler's United States subsidiary accounted for only 2.4% of Daimler's worldwide sales. *Daimler*, 571 U.S. at ___, 134 S. Ct. at 752. Even assuming that Daimler's United States subsidiary was "at home" in California, and that the subsidiary's contacts were imputable to Daimler, the Court found that "Daimler's slim contacts with [California] hardly render it at home there." *Daimler*, 571 U.S. at ___, 134 S. Ct. at 760.

¶ 59    Here, defendant failed to present any evidence concerning the amount of business it was conducting in Illinois. Unlike *Daimler*, the court received no evidence regarding the proportion of defendant's business derived from its contacts with Illinois, as compared to other states or countries. Defendant, which uniquely has access to this sort of information, chose not to provide it with its motion to dismiss. During argument on the motion to dismiss, the trial court asked defense counsel about the volume of business transacted in Joliet, and the square footage of the Joliet warehouse, but counsel was unable to respond to either question. After plaintiff made a *prima facie* showing of jurisdiction, the burden switched to defendant to prove that its contacts were actually "too slim" to support jurisdiction. *Russell*, 2013 IL 113909, ¶ 28. Although this information was uniquely within defendant's control, defendant failed to present it and thus failed to satisfy its burden.

¶ 60    Because defendant failed to overcome plaintiff's *prima facie* showing of jurisdiction, the trial court did not err in denying defendant's motion to dismiss. We have not been asked to consider either venue or *forum non conveniens* and thus offer no comment on those issues.

¶ 61                                    CONCLUSION

¶ 62    For the foregoing reasons, we affirm the trial court's decision denying defendant's motion to quash service and dismiss for lack of personal jurisdiction.

¶ 63    Affirmed.

¶ 64    JUSTICE LAMPKIN, dissenting.

¶ 65    I respectfully dissent. Because I would find that defendant Interstate Warehousing, Inc., was not "at home" in Illinois, as required for the exercise of general jurisdiction, I would reverse the trial court's denial of defendant's motion to dismiss the complaint based on lack of personal jurisdiction.

¶ 66　　　　　　The plaintiff has the burden of establishing personal jurisdiction. *Russell v. SNFA*, 2013 IL 113909, ¶ 27. General, or "all-purpose," jurisdiction exists "where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.' " *Daimler*, 571 U.S. at ___, 134 S. Ct. at 754 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). The Court explained the nature of the relationship required between a corporation and forum to establish general jurisdiction in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, where it stated: "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." 564 U.S. ___, ___, 131 S. Ct. 2846, 2851 (2011) (quoting *International Shoe Co.*, 326 U.S. at 317). "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at ___, 134 S. Ct. at 760. A corporation's place of incorporation and principal place of business, which define its domicile, are the paradigmatic fora states in which a corporation should be deemed to be "at home." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at ___, 131 S. Ct. at 2853-54. Although general jurisdiction is not limited to those states, it requires "an equivalent place" (*id*. at ___, 131 S. Ct. at 2853); *i.e.*, it "requires affiliations so continuous and systematic as to render [the foreign corporation] *** comparable to a domestic enterprise in [the forum state]" (internal quotation marks omitted) (*Daimler*, 571 U.S. at ___ n.11, 134 S. Ct. at 758 n.11).

¶ 67　　　　　　The Supreme Court's recent decision in *Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation. In *Daimler*, the Court held that

21

DaimlerChrysler Aktiengesellschaft (Daimler), a German corporation, was not subject to general jurisdiction in California based on the California contacts of its subsidiary, Mercedes–Benz USA (MBUSA). *Daimler*, 571 U.S. at ___, 134 S. Ct. at 750-51. MBUSA, a Delaware corporation, was Daimler's exclusive importer and distributor for the United States. MBUSA's principal place of business was in New Jersey, but it had multiple facilities in California, was the largest supplier of luxury vehicles to the California market, and its California sales accounted for 2.4% of Daimler's worldwide sales. *Id.* at ___, 134 S. Ct. at 752. The Court assumed that MBUSA would be subject to general jurisdiction in California and that MBUSA's California contacts could be imputed to Daimler; nevertheless, the Court still held that Daimler's contacts with California were not "so constant and pervasive as to render [it] essentially at home" in California. (Internal quotation marks omitted.) *Id.* at ___, 134 S. Ct. at 751.

¶ 68　　　　The Court in *Daimler* rejected as "unacceptably grasping" the plaintiffs' argument that general jurisdiction was appropriate whenever a corporation engaged in a substantial, continuous, and systematic course of business in a state. *Id.* at ___, 134 S. Ct. at 761. The Court emphasized that the paradigm fora for general jurisdiction were a corporation's place of incorporation and principal place of business (*id.* at ___, 134 S. Ct. at 760); only in an "exceptional case" would general jurisdiction be available anywhere else (*id.* at ___ n.19, 134 S. Ct. at 761 n.19). *Daimler* discussed an example of an "exceptional case"–*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), where the defendant, a silver and gold mining operation incorporated under the laws of the Philippines, could be sued in Ohio because a world war forced the defendant to temporarily relocate its principal place of business to Ohio due to enemy activity abroad. *Daimler*, 571 U.S. at ___, 134 S. Ct. at 756.

Specifically, the president of the mining company had moved to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities. *Id*. at ___, 134 S. Ct. at 756.

¶ 69 There is no similarly compelling case to be made for exercising general jurisdiction in this case. According to the record, plaintiff's claim arose from events that took place at defendant's Michigan warehouse. Defendant is incorporated in Indiana and its principal place of business is in Indiana. Defendant is a 75% member of a limited liability corporation, IW Illinois, which is organized under Indiana law with its principal place of business also in Indiana. IW Illinois operates a warehouse in Joliet, Illinois, and defendant employs Ryan Shaffer to serve as general manager at that Joliet warehouse. Shaffer is neither an officer of defendant nor its registered agent for service of process in Illinois. He is responsible for overseeing general operations at the Joliet warehouse, including safety, maintenance, and customer service.

¶ 70 The evidence does not show the nature or extent of defendant's activities at the Joliet warehouse, the size of the Joliet warehouse, how many operational divisions exist at the Joliet warehouse, how many employees Shaffer supervises, and the volume of business transacted from the Joliet warehouse. According to defendant's letterhead and website, defendant has–in addition to the Joliet warehouse–warehouses in Ohio, Colorado, Michigan, Tennessee, Indiana, and Virginia. Plaintiff's evidence does not show that the Illinois contacts of either defendant or IW Illinois were significant compared to their contacts in Indiana or any other state. See *Daimler*, 571 U.S. at ___ n.20, 134 S. Ct. at 762 n.20 ("General jurisdiction *** calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home

in all of them."). The fact that defendant employs a general manager to oversee the operations at the Joliet warehouse is not sufficient to show defendant is comparable to a domestic enterprise based on its own activities and does not suffice to confer general jurisdiction over defendant.

¶ 71   I cannot agree with the majority's conclusion that plaintiff has made a *prima facie* showing sufficient to subject defendant to the general jurisdiction of the Illinois court. The majority's conclusion is based upon defendant's advertising of the Joliet warehouse as its own, defendant's employment of Shaffer, and defendant's filing with the office of the Illinois Secretary of State and designation of a registered agent for service of process in Illinois. The majority places great importance on defendant's filing with the office of the Illinois Secretary of State as a showing that, since 1988, defendant applied for and received authority to transact business in Illinois. See *supra* ¶ 54. The majority, however, misses the point of *Daimler*, where MBUSA was conducting business in California to a much greater extent than defendant's slim business conduct shown here in Illinois, and the Court still characterized that contact with California as "slim." *Daimler*, 571 U.S. at ___, 134 S. Ct. at 760. Being authorized to transact business in Illinois does not distinguish this case from *Daimler*; the relevant question is whether plaintiff has established that defendant should be regarded as comparable to a domestic enterprise. Merely conducting business in Illinois from a home base in Indiana is hardly the sort of unusual fact that would render this an exceptional case amenable to the exercise of general jurisdiction in Illinois.

¶ 72   The facts here do not indicate that defendant has in any way adopted Illinois as a surrogate, *de facto*, or temporary home. There is simply no basis to infer that defendant has in any way sought to make Illinois the base of its business operations. Accordingly, plaintiff

24

has failed to make even a *prima facie* showing of general jurisdiction, and this court lacks personal jurisdiction over defendant.